In the matter of Prime.

NEW-YORK GENERAL TERM, November, 1847. *Hurlbut, McCoun, and Mason,* Justices.

## In the matter of PRIME and others.

Upon a writ of *habeas corpus* the court cannot look beyond the colorable authority of the judge who issued the warrant on which the defendant was imprisoned. It cannot inquire into the technicalities, nor the strict regularity, of the proceedings before that officer.

The writ of *habeas corpus* is not intended to review the regularity of the proceedings, in any case, but rather to restore to his liberty the citizen, who is imprisoned without color of law.

Upon a writ of *habeas corpus* the court will merely look into the sheriff's return containing the warrant by virtue of which he detains the relator, and into the affidavits upon which the warrant was issued, so far as to see that the officer issuing the warrant had colorable jurisdiction.

And if the court finds that the officer had jurisdiction of the process, and assumed to take proof upon the issuing of the same, which proof he adjudged to be sufficient, it will not review his adjudication upon that question; nor undertake to say whether he erred in adjudging the proof to be sufficient.

If the court finds that the warrant under which the relator is imprisoned is prima facie sufficient to justify the imprisonment, and if, on looking beyond the warrant, and examining the affidavit upon which the same was issued, it is satisfied that there was at least colorable proof before the officer issuing the warrant, on

In the matter of Prime.

which he might exercise his judgment in awarding the process, that is as far as the court will go, upon a writ of *habeas corpus*. And where these facts appear, it will not discharge the person imprisoned.

The general provisions of the *habeas corpus* act show that it was not intended as a writ of review, to correct the errors of inferior tribunals.

It *seems* that nothing is properly before the court, upon the return of a *habeas corpus*, except the warrant on which the relator is imprisoned. If that is regular on its face, and if the sheriff would be protected in an action of trespass, it is sufficient; and the relator cannot be discharged. *Per* HURLBUT, J.

ON *habeas corpus* to discharge Edward Prime, John Ward, and Samuel Ward, from the custody of the sheriff of the city and county of New-York. The sheriff returned that he held the defendants in his custody, and under his restraint, under and by virtue of the several warrants, copies of which were annexed to his return. Of those warrants, two were issued by the Hon. John W. Edmonds, one of the judges of this court—one upon the application of the Jefferson County Bank, (*a*) and the other on the application of the Bank of Commerce, in New-York—and three were issued by the Hon. T. J. Oakley, chief justice of the superior court of the city of New-York, upon the applications of other creditors of the defendants. These warrants, which were all in nearly the same form, were issued under the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 26, 1831. (*Laws of* 1831, *p.* 396.) Each warrant recited that whereas it satisfactorily appeared to the judge, by affidavits, copies of which were annexed to the warrant, that the applicant had recovered a judgment in a court of record for an amount exceeding fifty dollars, and for which the defendants could not be arrested or imprisoned, according to the provisions of the act to abolish imprisonment for debt; and that they had rights in action which they unjustly refused to apply to the payment of such judgment. And the warrants commanded the sheriff to arrest the defendants and bring them before the officer issuing the same, to abide such further order as might be made in the premises.

The affidavits upon which the applications for these several

(*a*) See Judge Edmonds' opinion, on that application, ante, p. 296.

warrants were made, set forth the recovery of the judgments, and the amounts due thereon respectively; and stated that the defendants were the owners of rights in action, money, and evidences of debt, which they unjustly refused to apply to the payment of the said judgments, and particularly that they had admitted they were possessed of certain demands or rights in action against sundry persons mentioned in such affidavits. It appeared from some of the affidavits that the defendants, when thus applied to and requested to apply their assets to the payment of the judgments, replied "we are insolvent, and unable to pay our debts in full. We are unwilling to make any preferences among our creditors, but we are willing to give you your full share of our assets, or to make an assignment of all our property for the equal benefit of all our creditors."

The defendants severally traversed the returns of the sheriff, on oath; insisting that the warrants were issued by the several judges or officers issuing the same, without the said judges or officers, or any of them, having acquired jurisdiction to issue the same under the act to abolish imprisonment for debt; and that the affidavits upon which such warrants were founded, were insufficient in law to justify the issuing thereof. Wherefore they averred that their said imprisonment and detention was unlawful, and that they were entitled to their discharge thereupon.

*N. Bowditch Blunt*, for the defendants. I. The act under which the several warrants issued is unconstitutional and void, 1. The act is in contravention of the 1st and 2d sections of article 7 of the constitution of 1821. Being passed under that constitution, it must stand or fall under the same. 2. It deprives the citizen of rights and privileges secured to him by the constitution, and is in violation of the letter and spirit of article 7, § 1, of the constitution of 1821, and article 1, § 1, of the constitution of 1847. 3. It deprives him of the right of trial by jury in cases in which it has heretofore been used; in contravention of the 2d section of article 7, of the constitution of 1821, and of article 1, § 2, of the present. 4. It creates a new court,

or tribunal, of final judgment, with a right to proceed contrary to the course of the common law; in violation of the last clause of § 2, article 7, of the constitution of 1821, and of article 6, § 10, of the present. 5. It inflicts a cruel and unusual punishment in violation of the bill of rights, of the 8th article of amendments to the constitution of the United States, of 1 *R. S. p.* 94, § 17, and of the 5th section of the present state constitution.

II. The term "by the law of the land," means a trial had according to the course of the common law—that is, a judgment by his peers. (*Taylor* v. *Porter,* 4 *Hill,* 140. 2 *Just.* 45, 50. *Hoke* v. *Henderson,* 4 *Dev.* 1, 15. 2 *Kent's Com.* 5th ed. p. 13, *and note b.* 3 *Story on Const.* 661. *In the matter of John and Cherry-st.,* 19 *Wend.* 696. *Magna Charta, ch.* 29.) This proceeding is also contrary to the spirit and meaning of the phrase "due process of law," as used in article 7, § 7, of the constitution of 1821, and article 1, § 6, of the present constitution.

III. The right of trial by jury applies to all cases in which the right existed prior to the adoption of the constitution of 1777. (2 *Kent's Com.* 5th ed. 13. *Murphy* v. *The People,* 2 *Cowen,* 815. *Also per Walworth, Ch.,* note *b.* 2 *Cowen,* 819. *Barker* v. *The People,* 3 *Cowen,* 686.) It is presumed not a case can be found in which a trial for fraud was had, without a jury, prior to the passage of the act of 1831, except in cases in equity. Cases of reference, contempts, the exercise of a summary jurisdiction by courts in relation to their officers, &c. are all based upon the ancient and established jurisdiction of the courts, and the modes of trial as regulated by the common law under magna charta. (*Lewis* v. *Garrett,* 5 *How. Miss. Rep.* 434. *R. M. Charl. Rep.* 302. *Lee* v. *Tillotson,* 24 *Wend.* 337. *Duffy* v. *The People,* 1 *Hill,* 355.) Such also are disciplinary proceedings, proceedings to prevent the commission of crimes, assessment of damages of the owners of property taken for public use. (*In the matter of Newell Smith,* 10 *Wend.* 456. *The People* v. *Duffy,* 1 *Hill,* 355. *Livingston* v. *The Mayor, &c.* 8 *Wend.* 85. *Beekman* v. *The Saratoga*

*R. R. Co.*, 3 *Paige*, 45.) Our own statute (2 *R. S.* 72, § 4,) makes the question of fraudulent intent in the disposition of goods, a question of fact for the jury. (*Cunningham* v. *Freeborn*, 11 *Wend.* 251. *Smith* v. *Acker*, 23 *Id.* 653.)

IV. The power conferred under the act of 1831, amounts to the creation of new tribunals, in violation of the constitution. 1. The provision of the constitution refers to courts exercising the usual jurisdiction of courts, but proceeding by modes unknown to the common law. (*Per Curiam*, *In the matter of Smith*, 10 *Wend.* 457.) 2. It applies to cases of trials of issues of fact in civil and criminal proceedings. 3. The mode of proceedings under this act amounts to a trial as for an offence, with a view to punishment; especially that part relating to "fraudulent disposition of property." (*Townsend* v. *Morrell*, 10 *Wend.* 577.) In this case, Chief Justice Savage, commenting upon this same act, says, "The imprisonment, if it actually takes place, is severe; it is to be in the same manner as imprisonment upon criminal process. It is then intended as a punishment." (*Id.* 581, 582.) 4. The constitution, in this particular, is substantially a transcript of the statute passed in the reign of Charles I. to destroy the courts of star chamber and high commission. (4 *Stat. at Large*, 816, § 5. *Dwar. on Stat.* part 2, *pp.* 294, 809.) 5. The erection of new tribunals for the decision of facts without the intervention of a jury, and the introduction of new and arbitrary methods of trial, should always be regarded with jealous circumspection. (3 *Black. Com.* 380, 381. 3 *Hamilton's Works*, 259. 3 *Dallas*, 388.)

V. The law inflicts a cruel and unusual punishment. Particular punishments, in certain cases, encroach upon rules and rights established by the constitution. (3 *Cowen*, 706.) Such are punishments entirely disproportioned in magnitude to the offence of which the accused is guilty. The effect of conviction under certain sections of the act in question, is perpetual imprisonment. (10 *Wend.* 582. *Laws of* 1831, *p.* 396, § 4, *sub.* 3. *Sess. Laws of* 1837, *p.* 466.) And that, too, in the same manner as upon criminal process, and without relief, except by

---

In the matter of Prime.

---

the repeal of the act. Any punishment operating as an infringement of some rule expressly established, or some right expressly reserved, is unconstitutional. (*Per Chancellor, Barker* v. *The People,* 3 *Cowen,* 706.)

VI. Assuming the law to be constitutional, the several affidavits upon which the warrants issued were insufficient to confer jurisdiction. 1. This is a summary proceeding unknown to the common law—the mere creature of the statute—and every fact necessary to confer jurisdiction must be affirmatively shown. (*Dakin* v. *Hudson,* 6 *Cowen,* 221.) 2. The affidavit of the creditor must make out a plain case. Facts must be stated; not conclusions. (*The People* v. *Recorder of Albany,* 6 *Hill,* 429.) 3. Every intendment must be made in favor of the debtor; it being a question of personal liberty. (*Dwar. on Stat. p.* 770, 749, 750. 4 *Bing.* 183.)

VII. The affidavits are defective in the several particulars mentioned. 1. The first affidavit is defective, in not setting forth the nature of the contract. This is requisite, in order that the court may determine upon the fact, whether the case comes within the provisions of the act. (*Dwar.* 661. *Sheers* v. *Parker,* 1 *T. R.* 141. *Rex* v. *Dukes,* 8 *id.* 542. *Rex* v. *Stone,* 1 *East,* 644. 6 *Hill,* 429.) 2. The first affidavit is further defective in not stating and setting forth the answer of the defendants to the alleged demand of the complainants; so that the officer might determine judicially whether it amounted in law, to an unjust refusal to apply. It will not do to swear that the party unjustly refused. Every refusal is not necessarily unjust; and the complainant is bound to set forth the answer to the demand, so that the officer may determine whether or not the refusal was unjust. 3. The second affidavit contains the answer of the defendants to the demand; and we insist that answer was not an unjust refusal to apply. (*Per Chancellor, Spear* v. *Wardell,* 2 *Barb. Ch. Rep.* 291.) 4. The third affidavit is defective in swearing to a conclusion of law, without giving the facts upon which such conclusion is formed. 5. The fourth affidavit is also defective in the same particular; and is uncertain and informal in other respects. 6. The fifth

VOL. I.                    44

affidavit does not even swear to the conclusion of law. The complainant swears to a refusal, but does not undertake to swear that the refusal was unjust.

VIII. The rule of pleading upon statutes containing exceptions in the enacting part, is to negative the exception. (*See cases above cited.*) And the same rule applies to the evidence.

IX. The petitioners are therefore entitled to be discharged.

*Geo. C. Sherman,* for the Jefferson County Bank. I. By the sheriff's return to the writs it appears that the relators are in his custody under a warrant issued on behalf of the Jefferson County Bank, being legal process, fair upon its face; the recitals contained in which are sufficient to confer jurisdiction, or if not conclusive, they are prima facie sufficient. (12 *Wend.* 102. 1 *Hill,* 154. 25 *Wend.* 483. 11 *John.* 224. 2 *Cowen & Hill's Notes to Phil. Ev.* 1016, 1017. *Id.* 993, 994. *Cave* v. *Mountain,* 1 *Mann. & Grang. Rep.* 275. *Ex parte Watkins,* 3 *Pet.* 193, 203. *Stoner* v. *State of Missouri,* 4 *Miss. Rep.* 614.) Error, irregularity, or want of form is not available. (*People* v. *Morris,* 1 *Hill,* 154. *Ex parte Kearney,* 7 *Wheat.* 38. *Ross' case,* 2 *Pick.* 165. *Riley's case, Id.* 172. *Ex parte Kellogg,* 6 *Verm. Rep.* 509.) If the return shows that the party is in custody under legal process fair upon its face, it is prima facie sufficient; and can only be impeached by the party who seeks relief from imprisonment thereon, by showing affirmatively a want of jurisdiction. (*See authorities above cited.*)

II. The relators cannot set up defects or irregularities in the evidence upon which the warrant was issued; but they must, on oath, distinctly set up the fact which exempts them from the jurisdiction of the officer—nor can they advert in this case to the evidence at all. (*Habeas Corpus act,* 2 *R. S.* 562, § 50. 2 *Cowen & Hill's Notes to Phil. Ev.* 1016, 1017. 1 *Hill,* 154. *People* v. *McLeod,* 3 *Hill,* 377, *and note to the case, and the authorities there cited.*) The matter set up by the relators to avoid the return, does not authorize them to bring up the evidence produced before the judge issuing the warrant. If they

In the matter of Prime.

desire to bring up the record on the return of the habeas corpus, they should sue out a certiorari to the judge to bring up the record. But this they cannot do, unless they are in custody on final process; and then a habeas corpus, aided by certiorari, will bring up the record and enable them to review the whole case.

III. The affidavits comply with the act, and confer jurisdiction upon the officer issuing the warrant. (*See Sess. Laws of 1831, p.* 896, §§ 1, 2, 3, 4, 5.) The affidavits do distinctly state the amount and nature of the demand; and we are not called upon to state the consideration.

IV. The question here raised may be regarded as *res adjudicata.* (*See Brittain* v. *Kinnard,* 1 *Brod. & Bing.* 432; *S. C.* 4 *Moore,* 5, *and cases there cited;* 2 *Cowen & Hill's Notes,* 1016, 1017, *and cases there referred to.*) When the jurisdiction of an inferior court depends upon a fact which such court is required to ascertain and settle by its decision, such decision has been holden conclusive. By stipulation of the relators' counsel it is admitted that after arrest the relators were brought before the judge, and these objections to the form of the affidavit were raised and argued on both sides, and adjudged not well taken; the judge holding the affidavits sufficient to enforce jurisdiction.

V. The refusal of the relators to apply their property as requested was unjust; inasmuch as the prosecuting creditors are entitled to a preference. It was evidently the design of the act to afford the vigilant creditor the precedence.

VI. The act is constitutional. The proceeding authorized by it is a civil proceeding; it is not an original proceeding, but is in aid of the creditor who has commenced a suit, or recovered a judgment, or decree. And the proceeding, though summary, is not designed to inflict punishment, but to give the creditor a right to imprison his fraudulent debtor for debt; in a similar manner as he could have done previous to the passage of the act of 1831.

*B. D. Silliman,* for the Bank of Commerce. The Bank of Commerce having recovered a judgment in this court against

In the matter of Prime.

the defendants, applied for and obtained a warrant according to the provisions of the act to abolish imprisonment for debt, &c. A similar warrant had been previously applied for, and obtained, by the Jefferson County Bank. Before any proceedings had been had on the Bank of Commerce warrant, except the arrest of the defendants, the defendants applied to this court for a habeas corpus; stating in their petition that they were wrongfully imprisoned on the warrant of the Jefferson County Bank, and charging that the proceedings in respect to the last named warrant were illegal and void—but making no such charge as to the warrant of the Bank of Commerce, and making no allusion to the last named warrant.

The Bank of Commerce has received notice of the habeas corpus, thus issued; and on its behalf I insist, I. That the court ought not, in this proceeding, to pass upon and decide as to the regularity of the proceedings of the Bank of Commerce. The court should decide only on the case in which the warrant is alleged by the petition to be illegal, viz. that of the Jefferson County Bank. (2 *R. S.* 467, § 27, *sub.* 3, 4, 5.) The return to the habeas corpus refers only to the authority under which the particular detention complained of as illegal exists. (2 *R. S.* 468, § 34.) The notice which is required to be given to parties " having an interest in the continuance of the imprisonment," refers only to parties who have an interest in continuing the imprisonment on the particular charge complained of, and alleged to be wrongful. (2 *R. S.* 471, § 48.) The Bank of Commerce have no interest in the proceedings under the warrant of the Jefferson County Bank.

II. But if the court hold that the case of the Bank of Commerce is to be decided under this habeas corpus, then we claim that our proceedings are regular and sufficient. 1. The affidavit is sufficient if it allege an unjust refusal, without setting forth any conversations. 2. The provisions of the act to abolish imprisonment for debt are a substitute for the former *ca. sa.*, and the plaintiffs are entitled to the warrant when they show, (1) a judgment; (2) that defendant has rights in action; (3) a demand and refusal to apply them.

In the matter of Prime.

*By the Court,* MASON, J.   The court, or a majorit̲ ⁻ of the judges, are decidedly of opinion, that in this case we cannot review the regularity of the proceedings had before his honor Judge Edmonds; and that upon the writ of habeas corpus we cannot look beyond the colorable authority of the judge to issue the warrants.   We cannot inquire into the technicalities, or the strict regularity of the proceedings.   This writ is not intended to review the regularity of the proceedings in any case, but rather to restore to his liberty the citizen who is imprisoned without color of law.   In these cases we can merely look into the sheriff's return, which contains the several warrants by virtue of which he detains the relators; and also into the affidavits contained in the traverse and upon which the judge issued the warrants, so far as to see that the judge had colorable jurisdiction.   Or, in other words, if we find that the judge had jurisdiction of the process, and assumed to take proof upon the issuing of the same, and which proof he adjudged to be sufficient, we will not, upon the writ of habeas corpus, review his adjudication upon that question ; nor undertake to say whether he erred in adjudging the proof to be sufficient.   In looking into the warrants under which the present relators are imprisoned, we find them regular upon their face, and *prima facie* sufficient to justify the imprisonment; ·and when we come to look beyond the warrants, and examine the affidavits upon which they were issued, we are satisfied that at least there was colorable proof, in these cases, before the judge, upon which he might exercise his judgment in awarding the process.   And this is as far as we intend to go in these cases.

We cannot but remark that the 50th section of the habeas corpus act, under which the relators claim to traverse and review the whole merits of these cases, is very loosely drawn ; and, taking the very letter of the statute, it might seem to admit of a broader inquiry ; but on looking into the notes of the revisers, and their reasons for reporting this section, we see they cite the case of *United States* v. *Jenkins*, (18 *John. Rep.* 305,) where it was doubted whether the return of the officer could be traversed at all.   And in the case of *The People* v. *McLeod,*

In the matter of Prime.

(1 *Hill's Rep.* 377,) the late Mr. Justice Cowen declares this to be the reason of the amendment. And the late Reporter Hill, in a very elaborate note to the review of the case of *McLeod,* (3 *Hill's Rep.* 634,) shows, in my opinion, the design and scope of this 50th section; and after reviewing all of the cases, he comes to the same conclusion which we have adopted in this case. And it seems to me that all of the objects of this 50th section, and of the writ of habeas corpus itself, will be accomplished by giving the statute this construction. The best guide in construing the statute undoubtedly is, to ascertain what the law was before, and what was the evil intended to be remedied by the amendment. It was said in the case above cited in 18 *Johnson's Reports,* and which is the only reason assigned by the revisers for reporting the amendment to this section, that the officer's return could not be controverted. But what does the officer return? Nothing more than that he detains the relators by virtue of certain warrants of which he annexes certified copies to his return. The strict traverse of the return would be to deny and controvert the fact that the sheriff does detain by such process as he returns, and that the same is valid, or good upon its face. But I prefer not to give the statute so strict a construction. Again; the general provisions of this habeas corpus act show most clearly that it was never intended as a writ of review to correct the errors of inferior tribunals. It has none of the guards which are usually thrown around such writs. This is a writ of right which every citizen can demand of the court, and the refusal of which is attended with severe penalties upon the court or officer that refuses it. And its design is to liberate, in a very summary way, every citizen who shall be deprived of his liberty without color of law. To this end the act is most remarkably well guarded; and if confined to its original purpose, is worth all the efforts and struggles it cost our ancestors to obtain it.

In these cases, as the warrants upon their face appear to be valid; and as the judge, to say the least, had colorable jurisdiction and authority to issue them, the relators must be remanded to the custody of the sheriff.

In the matter of **Prime**.

McCoun, J.   I am compelled to dissent from the opinion just expressed by my brother Mason, and which is the opinion of a majority of the bench.   I agree with my brethren, that upon a writ of habeas corpus, where the officer returns the warrant upon which he holds the party, if the warrant is good upon its face, that is all that can be inquired into, provided it is issued from a court of *general jurisdiction.*   If, however, the writ is issued by a court having a special jurisdiction conferred by statute, then it is legitimate for us, under a writ of habeas corpus, to inquire whether the officer had the case properly within his jurisdiction, so as to exercise rightfully the power vested in him by statute.   Such is the case before us upon this writ, and I am of opinion that we are obliged here to look into ·the affidavits upon which the judge acted.   I think these papers properly before the court.   The case of *Ex parte Randolph,* (9 *Peters' Rep.* 12, *note a,*) was a case where Lieut. Randolph was brought before a court on a writ of habeas corpus.   He had been arrested for not paying over certain moneys alleged to have been collected by him, and payable to the treasury department.   The court, in that case, looked into all the proceedings before the court below, for the purpose of seeing whether Randolph was properly subject to its jurisdiction; and they decided that he was not such an officer of government as to be subject to such a summary process, and the prisoner was discharged. I mention this case, for the purpose of confirming the position I have assumed, that when a judge acts in a summary proceeding, under a special power, the court before whom the habeas corpus is, can look into the affidavits.   This brings us to the affidavits upon which these proceedings were founded. The affidavits are explicit enough as to the nature of the demand, and they also show that the parties were in possession of certain assets of their firm, choses in action, &c. to the amount of about $40,000; that these creditors made a demand of the defendants, that they should apply these assets in payment of their demand, and that the defendants unjustly refused. As these assets could not be reached by a *fi. fa.*, they very properly come under the head of intangible property.   This is what

the affidavits made out as matters of fact. In my judgment, however, it is not a mere refusal which will authorize a judge to issue the warrant. It must be an "unjust refusal;" and whether the refusal is unjust or not, is a matter of law, to be determined from the facts which appear in the affidavits. I am at a loss to perceive how, in this case, there was an unjust refusal. The reply of the defendants, as appears from one affidavit, is, we are *insolvent,* and we are willing to apply all our property to the payment of our debts pro rata; that they did not want to prefer one creditor over another, and expressed their willingness to make an assignment. And yet, in this case, the magistrate felt authorized to issue a warrant, which could only be grounded upon an unjust refusal. The affidavits do not show any facts whatever, which can warrant such an inference. The mere statement, in the affidavit, that the refusal was unjust, amounts to nothing; as it is a mere conclusion of law, and not a proper subject of an affidavit. My brethren, however, contend that this expression, as it appears in the affidavit, gives a colorable authority to the judge to issue the warrant, and that behind this, we have no right to look.(*b*) If this case were before me upon the hearing, I should require some more facts to satisfy me that these parties have been guilty of fraud, such as amounts *to* an unjust refusal; and they will be at liberty *to* urge this ground before the judge. This statute, commonly called the Stilwell act, is one which undertakes to give a remedy in cases of fraud on the part of debtors, either in the original contracting of the debt, or in subsequently attempting to remove their property. Where these circumstances of fraud do not exist, we have other means by which to reach intangible property, viz. by creditors' bills. This is a proceeding, likewise, which will reach property attempted to be

(*b*) In the case of *The British Prisoners,* (1 *Wood, & Minot's Rep.* 66,) which was an application under the treaty with Great Britain, for the surrender of fugitives from justice, the objection was raised upon *habeas corpus,* that the inquiry into the conduct of the prisoners, preliminary to their commitment, was not had by a competent officer. And the court said they had no doubt it was proper for them to look behind the warrant, so far as to see that it was issued in a proper case, and by a competent officer.

disposed of fraudulently; so that this remedy may be resorted to not only in cases where there is no fraud, but in some cases where fraud exists. The Stilwell act was not intended to supersede the jurisdiction of the court of chancery. It was only intended to be applied to cases of actual fraud. In 1840, a law was passed extending the time within which execution might issue, to thirty days after the rendition of the judgment. And in addition to this, the sheriff has sixty days from the issuing of the *fi. fa.* before he is compelled to make his return. These are all an extension of credit, and an indulgence shown to the debtor, and abundantly prove that in all cases where he is honestly disposed, the law favors him. And it cannot be presumed that the statute commonly called the Stilwell act, was intended to authorize proceedings against all judgment debtors, when they may refuse to turn out their property in compliance with a demand of a creditor. They may have good reasons for so doing. This remedy, I repeat, is only for the cases where the creditor has committed, or contemplates, a fraud. It is a remedy involving severe proceedings, and cannot be considered as of general application.

And what sort of an application is the debtor to make ? The statute does not say that he shall turn out his notes, &c. Shall he make an assignment ? He is to apply them in payment. If they consist of outstanding claims, how can he apply them ? In relation to such, I think it would be right for him to say, I will apply them when I have collected them. It is unnecessary however, for me to go further with this subject. In *The People* v. *Recorder of Albany*, (6 *Hill*, 429,) Mr. Justice Bronson states the true ground. In this case, it is not pretended that these defendants concealed their property : nor are they charged with the commission of any unjust act, save the mere refusal. And in my opinion, the allegations of the affidavits on which the warrant was issued were insufficient to justify the proceeding ; and the parties should be discharged.

MASON, J. The refusal of the defendants is not a criminal act, by the terms of the statute. My opinion is, that we can-

In the matter of Prime.

not look behind the colorable nature of the proceeding. It is not within the province of a habeas corpus to look into the character of the facts, beyond those sufficient to give colorable authority.

HURLBUT, P. J.   I myself doubt whether any thing is properly before the court, upon this proceeding, except the warrant itself.   If that is regular on its face, and if the sheriff would be protected in an action of trespass, it is sufficient; and we cannot discharge the prisoners.   But my brethren differing with me, in this view of the subject, I joined them in going back and looking into the affidavits.   In the case of the Jefferson County Bank, it is alleged that there were not sufficient facts to authorize an inference of an unjust refusal.   No member of this court intends deciding that there has been a fraudulent, or even an unjust refusal.   Our simple object is to determine what are the functions of a writ of habeas corpus.   I find here that certain facts were adduced before the officer, from which he inferred an unjust refusal.   If he erred, it was a *judicial* error, and cannot be reviewed on a writ of habeas corpus.   Whether he erred or not, is not for us now to say.   We cannot entertain a writ of habeas corpus to review errors of judgment, where there is colorable proof to authorize the process.   That can only be done by a writ of certiorari.

McCOUN, J.   I consider this a *void* process, and it can be reviewed for that reason.

Order remanding relators to the custody of the sheriff.

SAME TERM.    *Before the same Justices.*

CORLIES *vs.* WADDELL.

Recognizances in criminal cases should not be made returnable before a judge, at chambers; and if made returnable in that manner, the prisoner is not bound to appear there.

They should be made returnable before the court, at a term thereof.

A marshal of the United States bears the same relation to the circuit court of the United States that a sheriff does to the county courts in this state; and his duties are very analogous to those of a sheriff.

A marshal has no right to receive money upon an estreated recognizance in a criminal case, until an execution has been duly issued and placed in his hands.

And if a surety in a recognizance of that nature, after having waived the issuing of an execution, pays to the marshal the amount due upon such recognizance, he may sue the marshal, while the money is still in his hands, in an action for money had and received, and recover the same back.

ERROR from the superior court of the city of New-York. In April, 1838, James Bottomley was arrested on a warrant issued by S. Rapelje, an officer of the United States government, (a commissioner,) for smuggling and perjury. The prisoner was taken before that officer, and entered into recognizances to appear at the chambers of Judge Betts on the 24th of April. On the return day of the recognizances, Bottomley did not appear; and his recognizances were subsequently estreated, by the circuit court, and an entry made on the minutes of the court, ordering execution to issue. Corlies, the plaintiff, was the surety in the recognizances. He told Rapelje, the marshal, that there was no necessity for issuing execution, but that he would pay the money whenever it was called for. Accordingly, no execution was issued. Rapelje afterwards called on Corlies for the money, who delivered to him $4000, to be paid to Waddell, then United States marshal, to be applied to the discharge of the recognizances. Subsequently, however, and while the money was in Waddell's hands, Corlies changed his mind, and gave him notice not to pay the money over, and thereupon brought his action, in the superior court, to recover the amount, as money had and received. In that court a verdict was rendered for the defendant; the court holding that the defendant

had the power to receive the money either as the marshal of the United States, or as being considered a disbursing officer of the United States; and that his receipt was a satisfaction of the recognizances.

· *Jonathan Miller,* for the plaintiff.  I. The recognizances were void *ab initio.*  Sylvanus Rapelje was not a, commissioner authorized to take them.  His authority was derived exclusively from the 104th rule of the circuit court, and extended only to the taking of bail in civil cases.  The circuit court gave a construction to the 104th rule in *Hornbeck's case.*  (*See MS. certificate of Hon. S. R. Betts, Dist. Judge.*)  In which case it decided that an affidavit sworn to in a criminal proceeding before a commissioner *ex officio* under that rule was not perjury, on the ground that a commissioner under that rule had no legal authority to administer oaths in criminal proceedings: and the judgment was arrested.  And this is further shown by the fact that the said court subsequently amended the rule, and gave to the commissioners under the rule power to take affidavits, bail, &c. in criminal cases.  The circuit court therefore had no jurisdiction or right to order the recognizances to be estreated.  If Rapelje had authority to take recognizances in criminal cases, still the recognizances in question were not taken nor made returnable pursuant to law, so as to give the circuit court of the United States jurisdiction of the matter of the recognizances.  There was no examination of, or proof against, the prisoner, nor were the recognizances made returnable before any court, but before a judge at chambers.

II. The defendant, although a marshal of the United States, did not collect the money under or by virtue of any process or authority of any court, or receive the same in his official character.  He acted merely as the agent of the plaintiff to pay it over to the United States.  And no act having been done on the part of the United States amounting to an acknowledgment that the receipt of the money by the defendant was a payment to them, his receiving the same did not discharge the plaintiff's liability to the United States.  The plaintiff has the right to

III. If, however, the defendant in the receipt of the money, may be claimed to have been the agent of the United States, yet the plaintiff would be entitled to recover the money back from the defendant in this action, on the ground of its having been parted with under mistake of material facts : the defendant not having paid it over to his principal before suit brought. Rapelje supposed he had authority given to him to take the recognizances, when he had not. This was a mistake of fact, and not of law. The commissioner *might* have had power to take bail in criminal cases. The court *could* have conferred it upon him, but had not done so. Whether they had or not, was *a fact.* And the plaintiff, when he executed the recognizances, and when he deposited the money with the defendant to be paid over to the United States, supposed and believed that Rapelje had had authority given to him to take such recognizances. These were mutual mistakes of material facts supposed to exist, and which did not exist, and which alone influenced the plaintiff to part with his money. (*Story on Agency,* § 300. *Lazall* v. *Miller,* 15 *Mass.* 207. *Milnes* v. *Duncan,* 6 *Barn. & Cress.* 671. *Putnam* v. *Westcott,* 19 *John.* 73. *Mowatt* v. *Wright,* 1 *Wend.* 355.)

IV. As it does not appear that the United States have made any claim, or pretence of claim, to the money in the defendant's hands, the only question before the court is whether the plaintiff, or the defendant, as between them personally, is entitled to the money ; and personally the defendant has neither a legal or equitable right to retain the money from the plaintiff.

The exceptions on the part of the plaintiff were well taken; and the judgment rendered by the superior court in favor of the defendant was erroneous, and should be reversed.