VENUS, The (BREED v.). See Case No. 1,-827.

VERE, The (REID v.). See Case No. 11,670.

---

## Case No. 16,915.

### In re VEREMAITRE et al.

[3 Am. Law J. (N. S.) 438; 9 N. Y. Leg. Obs. (129) 137; 13 Law Rep. 608.]

District Court, S. D. New York. Dec. 16, 1850.

HABEAS CORPUS — JURISDICTION — EXTRADITION PROCEEDINGS—STATE COURTS—DISCHARGE OF SOLDIER OR SAILOR.

1. On habeas corpus the court will merely look into the sheriff's return containing the warrant; and if the officer issuing it had jurisdiction of the process, and assumed to take proof upon the issuing of the same, which proof he adjudged to be sufficient, the court will not review his adjudication upon that question, nor undertake to say whether he erred in adjudging the proof sufficient.

[Cited in Re Macdonnell, Case No. 8,771; s. c., Id. 8,772; Re Stupp, Id. 13,563.]

2. A commitment by a United States commissioner, and a warrant of extradition by the secretary of state, charging an individual with "having committed, within the jurisdiction of France, the crime of vol qualifie crime, one of the crimes enumerated and provided for in the treaty of extradition between that government and the United States," contain a sufficient allegation of crime, under the treaty; the words imply the commission of an extensive larceny, attached to which is an infamous punishment, like confinement at hard labor.

3. Where a prisoner brought up on habeas corpus is held under several commitments, one under state authority for an offence against the state, and the other under United States authority by virtue of a treaty of extradition with a foreign nation, the United States court will dismiss the habeas corpus—that portion which relates to offences against the state—for want of jurisdiction, and the other portion because the commitment and warrant of extradition comply substantially with the treaty and the act of congress.

4. A state court has no jurisdiction on habeas corpus to discharge a soldier or sailor held under a United States law.

[Cited in Re Forrand, Case No. 4,678; Re Henrich, Id. 6,369.]

A. R. Dyett and H. D. Lapaugh, for the prisoners.

Mr. Tillon and J. Prescott Hall, Dist. Atty., for the United States.

JUDSON, District Judge. The original petition for this writ was filed in this court on the 14th day of December, 1850, was allowed on that day, and the trial thereof was ordered for the 16th. The writ is in the usual form, supported by the proper oath, and on the 16th day of December, 1850, William Edmonds, to whom the said writ was directed, as warden of the city prison of the city and county of New York, made return of said writ, bringing with him into court the three persons now in his custody by virtue of three warrants of commitments, two of which are from the court of general sessions in and for the city and county of New York, signed by the proper clerk thereof, the first containing an order to imprison, keep, and hold the said Nicholas and George, charged with the crime of bringing into the state of New York, stolen goods, knowing them to be such, a crime against the laws of New York; and the other warrant commanding the said William Edmonds to hold in custody the said Francoise Bernard as a witness, to give evidence in the cause therein named, the said Francoise having failed to give the proper bail for her appearance as a witness; the former bearing date the 11th day of December, 1850, and the latter, on the 13th day of said December, 1850. The return further states, that the said Nicholas, George and Francoise, are also in his custody and keeping, as warden as aforesaid, by virtue of another warrant granted by J. W. Metcalf, United States commissioner, in the following words, to wit: "United States of America. To the Marshal of the United States for the Southern District of New York, and to His Deputies, or to Any of Them: Whereas, a warrant was issued by me on the sixteenth November, 1850, for the apprehension of George Denham, alias Frederick Cole, Nicholas Veremaitre and Francoise Bernard, persons found within the limits of the state of New York, charged with having committed within the jurisdiction of the republic of France, to wit: in the city of Paris, the crime of vol qualifie crime, one of the crimes enumerated and provided for in the treaty of extradition between that government and the United States; and whereas, the said persons having been brought before me, and the evidence of their criminality having been heard and considered, the evidence was deemed sufficient by me to sustain

the charge under the provisions of the said treaty. Now then, you are hereby commanded to keep the said George Denham alias Frederick Cole, Nicholas Veremaitre and Francoise Bernard, in safe custody, in the proper jail, until they shall be surrendered on the requisition of the proper authority to such person or persons as shall be authorized in the name and on the behalf of the said republic of France, to take charge of them for the purpose of returning them to the territories of the said republic. Witness my hand and seal, this sixth day of December, 1850, and of the Independence of the United States the seventy eighth. (Signed)    J. W. Metcalf, United States Commissioner."

The object of this writ is to procure the discharge of these prisoners. The petitioners have been fully heard in support of their rights, by learned counsel, and the cause having been deferred for consideration until the twenty-third day of December, 1850, when the prisoners are again brought into court, and thereupon it is ruled by this court as follows: Upon this return, there are two important questions involved, as important as any which can be suggested to our minds—they regard not only the civil liberty of men, the code of criminal law, and treaty stipulations, but also in what manner the same shall be administered. The questions which arise upon the two warrants issuing out of the state courts are passed over; and I proceed directly to consider the main question which has been the subject of discussion here. This is the warrant of the United States commissioner, upon the inquiry which has been had before him on the demand of the republic of France, wherein these three persons were charged with the commission of a crime in France which, as that government claims, is a crime falling within the provisions of the treaty between the United States and France. From this warrant, it appears that a hearing was had before the commissioner, and that he deemed the evidence sufficient to sustain the charge, and thereupon the warrant in question was issued. Accompanying this return of the writ, on the day of the trial, and during its progress, there was also laid before the court, a warrant of extradition, granted by the Hon. Daniel Webster, secretary of state, under his hand and seal of office, dated ———, founded on the proceedings of the commissioner, directing and ordering that the said Nicholas, George and Francoise, be surrendered to the consul general cf France, as fugitives from justice. This document is made a part of the case, and the question now is, shall these prisoners be discharged, or shall the habeas corpus be dismissed, and the prisoners left subject to the warrants in the hands of the public officers? The first treaty with France was concluded on the 9th day of November, 1843 [8 Stat. 580], and provided for the surrender of those who were charged with murder, comprehending the crimes designated in the French penal Code, by the terms assassination, parricide, infanticide, and poisoning, attempt to commit murder, rape, forgery, arson, or embezzlement. This being found inadequate to cover all the crimes perpetrated in both governments, on the 24th day of February, 1845 [Id. 817], an additional treaty was concluded, embracing other crimes, in these words: "the crime of robbery, defining the same to be the felonious and forcible taking from the person of another, cf goods or money to any value, by violence, or putting him in fear; and the crime of burglary defining the same to be, the breaking and entering by night into a mansion house of another, with intent to commit felony; and the corresponding crimes included under the French law, in the words vol qualifie crime, not being embraced in the second article of the convention of extradition concluded with France, in 1843." The warrant of the commissioner on the face of it is a prima facie compliance with the terms of the treaty, and from the face of the warrant of the secretary of state, it also appears that the proceedings and findings of the commissioner were duly returned to the office of the secretary of state, according to the act of congress of the United States, entitled, "An act for giving effect to certain treaty stipulations between this and foreign governments, for the apprehension and delivering up of certain offenders," passed on the 12th day of August, 1848 [9 Stat. 302]. The first section of that act gives jurisdiction to a United States commissioner, upon complaint made on oath, and he is to issue his warrant for the apprehension of persons charged with offences under the provisions of a treaty; and if, on hearing the evidence, he shall deem the same sufficient to sustain the charge, then such commissioner shall certify the same to the secretary of state, and issue his warrant to commit to jail until the surrender shall be made by the secretary of state. On a minute examination of all the proceedings in this case, it appears, from the face of the papers now returned, that the provisions of the act of congress have been strictly complied with.

The first point made by the learned counsel, in opposition to the legality of this proceeding, is, that there has been no crime committed by either of these persons in custody, which will justify the extradition commanded in the warrant of the secretary of state, and it is insisted that the terms "vol qualifie crime" are descriptive of no specific crime whatever, and therefore the counsel insist upon the right of going behind the present finding and warrant of the commissioner, to show, by testimony, that no such crime has been committed as falls within the treaty. The writ of habeas corpus has been long in use as a writ of right. It is a judicial writ, confided to the legal discretion of the courts, to whom its jurisdiction has been imparted. The great principles by which the courts are governed, in the proceedings on this writ, are as well settled, and perhaps better settled, than those applicable to any other department of the law. Among these principles, we find the legality or illegality of the imprisonment is to be determined by the return, or in

other words, on the face of the papers of the case. The argument in support of this writ would apply with great force to an appeal, but there is a difference, well settled, between an appeal and this writ. In one case the facts are re-examined, but in the other the law is applied to the facts already found. In determining this case, we are to consider, first, whether the commissioner had jurisdiction of the subject matter. The law of congress, before referred to, confers this jurisdiction in express terms. He is to hear the evidence, and if he deems it sufficient to sustain the charge, the warrant issues. No language can be more explicit, and, from the purport of that language, the jurisdiction is not only given, but it is exclusive. Then the next inquiry is, how can this court go behind the finding of any tribunal having exclusive jurisdiction, for the purpose of reviewing the facts? This question has been so well and so long settled, that there is no room for doubt. Ex parte Kenedy, 7 Wheat. [20 U. S.] 38. In that case the supreme court said: "This court can do nothing, where a person is in execution by the judgment of a court having a competent jurisdiction; this court is not a court of appeal." Gregory v. Story, 1 Dall. [1 U. S.] 135: "When, on the face of the return it appears that the justice exceeded his jurisdiction, then a habeas corpus lies." 1 Ashm. 10; Rush, J., said: "On habeas corpus, it is not competent for one court to inquire into the regularity of the proceedings of another." Johnson v. U. S. [Case No. 7,418]: "On a habeas corpus the court cannot look behind the sentence of the court where it has jurisdiction." In Jacob's Law Dictionary (title "Habeas Corpus"), we find the following laid down, in early times, as the criterion: "This it is which induces the absolute necessity of expressing, upon every commitment the reason for which it is made, that the court upon habeas corpus may examine into its validity." Wiles v. Brown, 3 Barb. 37: "Where a supreme court commissioner has become possessed of jurisdiction of the subject matter and of the parties, the law clothes him with judicial powers, and in analogy to other proceedings, his decisions cannot be impeached in a collateral way." In re Prime, 1 Barb. 340: "Upon a writ of habeas corpus, the court cannot look beyond the colorable authority of the judge who issued the warrant. The court will merely look into the sheriff's return containing the warrant; and if the court finds that the officer had jurisdiction of the process, and assumed to take proof upon the issuing of the same, which proof he adjudged to be sufficient, it will not review his adjudication upon that question, nor undertake to say whether he erred in adjudging the proof sufficient. If the court thinks that the warrant is prima facie sufficient, that is as far as the court will go on habeas corpus." The counsel, in support of this writ, have cited Ex parte Bollman, 4 Cranch [8 U. S.] 75. On reading that case, it will be seen that there was a writ of habeas corpus to bring up the bodies, and a certiorari to bring up the record. It appeared

there, that there was no allegation where the crime of treason was committed; neither was it stated in the warrant before what court the trial was to be had, and on the face of the warrant there was no sufficient statement that the court in the District of Columbia had any jurisdiction of the cause. These authorities are conclusive, that we cannot go behind the proceedings of the commissioner's warrant in this case; and these authorities will apply to all cases of courts or magistrates having exclusive jurisdiction of the subject matter, except where fraud or forgery have been practised, as in the case of The L'Amistad, 14 Pet. [39 U. S.] 518. These authorities are conclusive on this point, and yet the importance of the case will be my apology for giving a further illustration, by alluding to a proceeding which has become familiar to all the states, and which was the foundation of all the treaties recently made for the restoration of fugitives from justice. The 2d section of the 4th article of the constitution of the United States, provides that, "A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." Then comes the act of congress of '93, which provides that, when such demand is made, there shall be produced a copy of an indictment found, or an affidavit made before a magistrate charging the person with the crime, certified as authentic by the governor, making the demand. On deeming these authentic, it shall be the duty of the governor, upon whom the demand is made, to cause the person accused to be arrested and delivered up. Now, suppose a person commits the crime of burglary in Rhode Island, and flees to the state of New York—the grand jury of Rhode Island find their bill of indictment, which is certified by the governor of Rhode Island to be authentic, and he demands the surrender of the man charged with the offence, what has the governor of New York to do? He is to examine the evidence of authenticity; and on finding the same properly certified, he has but one duty to perform; to arrest and surrender the prisoner. Here is an opportunity for the habeas corpus to review the decision of the governor, upon which his warrant of arrest issued; and it is proposed to go behind the warrant of surrender, and inquire into the evidence received and considered by the governor, with the addition, if you please, of other testimony, to show that no such crime has been committed as has been charged in the indictment. A habeas corpus, in such cause, accompanied by a proposition to review the cause in this manner, would strike every one as absurd. No such thing can be done in that case; all will admit that. The practice, since 1793, has been uniform, that, on habeas corpus, you cannot go behind the governor's warrant when he surrenders a fugitive from justice. Should there be any statutory provision that the trial of this judicial writ should take place

before a jury, this would only increase the absurdity. To witness a governor's finding and decision reviewed and re-examined by a jury of twelve men, would be so singular and ridiculous that any stranger would pronounce it a farce. In principle there is no difference between that case, and one for the same purpose under the treaty.

It has been argued that even if we are confined to what appears on the face of the return, still the prisoners should be discharged, for the reason that, upon the face of the commissioner's warrant, it does not appear that any offence has been committed in France, called "vol qualifie crime"—in short, that there is no such offence in France as "vol qualifie crime." An ingenious criticism has been applied to the warrant of the commissioner, and that of the secretary of state, as to the meaning of the French term "vol qualifie crime," used in the treaty, and what should be the proper interpretation of the terms as used in the treaty. This is a technical objection which cannot apply to proceedings on habeas corpus, for in such proceedings the substance is to be regarded and not the mere form. It substi r tially appears on the face of these warrants, that a crime embraced within the French treaty, has been the subject of evidence before the commissioner. And if it does in substance so appear, that is sufficient. In these proceedings on habeas corpus, all that can be required is a substantial allegation that the offence has been committed in the country from whence the demand is made. And so far as I am able to understand the translation of those terms of the treaty, they imply the commission of an extensive larceny, attached to which is an infamous punishment, like confinement to hard labor. We cannot shut our eyes against various efforts to legislate this writ of habeas corpus into such a machine as may answer some favorite purpose with the popular voice, and wherever we find such legislation, it will be seen that the utility of the process is much impaired. The unnatural lumber thus attached to its original and simple framework, only serves to embarrass and retard its usefulness. The writ is judicial, and secured to citizens by the constitution. It cannot be suspended except in time of war, and yet it may be so tinkered, changed, altered, that the framers of the constitution would hardly recognize its existence. But it is to be hoped that, in congress at least, the ancient writ of habeas corpus may be retained as an efficient and important right of the citizen, in its simple and long established mode of trial. Should congress go seriously to work in so reforming the judicial system, as to order all the judicial writs known to the common law, such as writs of error, habeas corpus, mandamus and quo warranto, to be tried and determined by jury, the civilized world might well be astonished. There is no danger of any such pretended reform in that quarter. Up-

on that part of the habeas corpus which shows that these prisoners are held in custody on the warrant of the United States commissioner, and embraced in the warrant of extradition from the secretary of state, it is ruled that the habeas corpus be dismissed. There is still another part of the return, which shows that the prisoners are held by two warrants of commitment from the court of general sessions of the city and county of New York. Those were the first in order, but according to the views which are entertained by the court, it 's quite immaterial which branch of the case is first determined. In regard to these commitments, I take this occasion to say, that I do not entertain jurisdiction of this writ on their behalf. There is no occasion for any United States court to express an opinion, at this day, that we can discharge any prisoner who is held and imprisoned under state authority, or by virtue of a warrant issued by any state court. This is wholly beyond the jurisdiction of the district court of the United States. It is a principle acknowledged by all well informed citizens, that the line of jurisdiction between national and state jurisdiction, should be so strongly marked, that every court shall abide by that line. To prevent all conflict of jurisdiction there should be no encroachment on either side. Situated as the states are in relation to the general government, the first step of encroachment or conflict should be avoided. Let this be the rule, and all will be safe and harmonious. Such will be the order on this writ of habeas corpus. This is deemed the true course, if we consult original principles or decided cases. I shall leave the state authorities and their warrants where they are found by this writ, presuming that the state authorities will be quite as ready to remove out of the way of treaty stipulations, all obstructions, as the courts of the United States themselves. The state courts are in no want of knowledge that a treaty is the highest law of the land, the constitution only excepted, and that the states are as much bound by treaties which exist, as congress itself, and we are not to suppose for a moment that any state will thrust obstacles in the way of their execution. In support of these views. I will refer to the following cases. In the present case it is understood that his 'onor, Judge Edmonds, on this principle, has refused to entertain the habeas corpus brought before him, by these prisoners, and the case was there dismissed. The correctness of that decision is apparent. It has been argued here, on the other point in controversy, that this writ is often brought to relieve persons who belong to the army or navy of the United States, but nothing was contained in the argument as to the proper tribunal. It may be assumed as correct, that in all cases where the imprisonment is under the authority of the United States, the court of the United States only have jurisdiction of the writ of habeas cor-

pus: and in all cases where the imprisonment is-under state process or authority, the state tribunals alone have jurisdiction. Ferguson's Case, 9 Johns. 239. The great principle settled in this case is, "that a state court has no jurisdiction of habeas corpus, to discharge a soldier of the United States army." Kent, C. J., gave the opinion of the court in that case, and I quote here the substance of his opinion. This is the language of that learned judge: "My conclusion is, that it would not only be unfit for the court to interpose in this case, so long as the courts and judges of the United States have ample and perfect jurisdiction over the whole subject matter, but that it would be exercising power without any jurisdiction." It will not diminish the weight of this authority when it is stated that the late Mr. Justice Thompson, then a member of the supreme court of New York, concurred in the opinion expressed by Chief Justice Kent, and enforced his own opinion in language equally strong. Two such minds rarely occupy the same bench together, and although many years have passed away, still the authority remains unshaken. I rest upon it with entire confidence, knowing, too, that no other rule can be adopted, without bringing the United States authorities into conflict with the state authorities. I know full well, that during the war of 1812, there were instances where the habeas corpus was brought before a state judge, to discharge an enlisted soldier from the army; but when we know, too, that these small proceedings were countenanced more from an opposition to the war, than from principles of law, they will cease to influence our minds. I am constrained to say that those proceedings were so palpably erroneous, that they can never be urged as authoritative decisions. If the state courts can discharge a soldier from the army, or a sailor from the navy, on habeas corpus, then the United States courts and United States judges may exercise the similar jurisdiction over the militia of the states, in time of peace. Here is a man subject to military duty in Maryland, and a fine is imposed on him for neglect of duty, or for contempt or disobedience of orders while on duty, and he is imprisoned by a warrant from his commanding officer. Now, I will ask, whether it would be either lawful or expedient that a judge of the United States should discharge that person on habeas corpus? No, this could not be done; it never will be attempted; and yet, where is the difference between the two cases? There is none. Further to illustrate my position, we may suppose, under the tax system, in any one of the states on refusal to pay a tax, the person is committed on a tax warrant from a state justice, can a judge of the United States discharge the individual on habeas corpus? Surely not. There is no jurisdiction. It is a state matter altogether. So, on the other hand, where the proceeding is under any law of the United States, the jurisdiction belongs exclusively to the officers of the United States. The exercise of these powers, in the manner stated, will secure peace, while any assumption of power upon either side, will be the source of discord, disastrous to the country. The final order of the court is, that the habeas corpus be dismissed—that portion of it which embraces the return of the warrants from the court of sessions—for want of jurisdiction over the subject matter; and the other portion, embracing the warrant of the commissioner, for the reasons already stated, leaving the warrant of extradition, from the secretary of state, in the hands of the marshal, no way affected or impaired by this writ.