[PHILADELPHIA, FEBRUARY 16TH, 1841.]

## Exparte SCHULTZ.

HABEAS CORPUS.

1. A justice of the peace has no right to hold an inquisition *super visum corporis*.

2. And where to an habeas corpus, return was made that the prisoner was held upon a warrant founded upon such inquisition, the prisoner was discharged.

THIS case came before the court upon a habeas corpus to the keeper of the jail of Montgomery county, to bring up the body of Michael Schultz.

By the return it appeared that the prisoner had been committed by virtue of a warrant of a justice of the peace of the county of Montgomery; of which the following is a copy.

" Montgomery county, ss.
    The commonwealth of Pennsylvania to the constable of Upper Providence, in the county of Montgomery, and to all other constables and good people of said county, greeting.
Whereas Francis Hobson, Daniel Schuerick, Abraham Breighler, Solomon Missimer, Isaac Shalcup, upon their solemn oaths; Frederick Bergstresser, John Longacre, Samuel Custer, Daniel Stall, Ephraim Crater, Samuel Hallman, and Amos Thomas, upon their solemn affirmations, twelve good and lawful men of the county aforesaid, upon their oaths and affirmations duly administered according to law by me, the subscriber, one of the justices of the peace in and for the county of Montgomery aforesaid, acting for the coroner of said county of Montgomery, as an inquest upon the view of the body of Samuel Speece, a deaf and dumb man, about thirty-seven years of age, who was run over by the burden cars on the Philadelphia and Reading rail-road, on the morning of the 12th of January, 1841, in the township of Limerick, in the county aforesaid, by one Schultz, while in the guidance of and conducted by the said          Schultz—the aforesaid inquest as aforesaid by me had and taken, the sixteenth day of January, 1841, at the house of Samuel

(Exparte Schultz.)

Speece, in Limerick township, and county aforesaid, adjourned to Hobson's school-house in the aforesaid township, to the 18th inst., at one o'clock P. M., who upon their oaths and affirmations, and charged to inquire how, when and where the said Samuel Speece came to his death, and all other matters relating thereto, did report, that the said Samuel Speece was violently and negligently, while on the track of the aforesaid rail-road, run over on the morning of the twelfth of January, 1841, in the township aforesaid, by the aforesaid Schultz, as aforesaid, and then and there by the cause aforesaid cut off his right arm above the joint at the shoulder, broke the shoulder-blade and collar-bone, beside many other mortal wounds, received then and there, and by the cause aforesaid to him the said Samuel Speece received, then and there languished, and languishing died on the night of the fourteenth day of Janury, 1841, at about 10 of the clock P. M. by the wounds received then and there, and not otherwise; against the peace and dignity of the commonwealth. You and every of you are therefore hereby commanded to take the said Schultz, and convey him to the common jail of the county of Montgomery; and the keeper thereof is hereby commanded upon sight hereof to receive the said Schultz, conductor as aforesaid, into custody, and him safely keep until he be delivered by due course of law.    Witness the said John Dismant, at Upper Providence township, in the aforesaid county, the nineteenth day of January, one thousand eight hundred and forty-one.

(Signed)        JOHN DISMANT."

Mr. *Meredith*, for the prisoner, contended, that the inquisition having been taken by a justice of the peace, was a nullity, and did not warrant the commitment.    In the case of *The Commonwealth* v. *Brock*, in Luzerne county, this point was decided by the present chief justice, then president of the Court of Common Pleas of that district.

[C. J. GIBSON.—The defendant had been convicted of murder in the second degree; and a new trial was granted because the inquisition was taken by a justice of the peace.]

In *Rex* v. *Killinghall*, (1 *Burr.* 17,) a presentment or inquisition found by the grand jury at the general sessions of oyer and terminer was quashed.    There the coroner had died.    There is no authority for a single justice, or all the justices, to hold an inquisition *super visum corporis.*    That is exclusively the duty of the coroner.    Stat. 3 Hen. VII. c. 1, (*Rob. D.* 102,) the statute of coroners.    In case of wounding to death, the coroner ought to inquire and record and certify; orders that every coroner do his duty accordingly, &c. By stat. 1 & 2 Ph. & Mary, c. 13, cited *Rob. D.* 106, (not given,) the coroner is to put in writing the whole evidence; the justice of the peace, what is material; showing a difference.    2 *Hale's P. C.* 61.    1 *Hale's P. C.* 414, inquisition before coroner in case of *felo de*

*se*, is conclusive. 2 *Lev.* 140, coroner's inquest *super visum corporis*, 1 *Vent.* 181. If the coroner omits this, the Court of King's Bench may inquire, or make commissioners; or commissioners of oyer and terminer may inquire; but then it is not *super visum corporis*, and therefore may be traversed. Suppose after such an inquest, the coroner should hold another, who found differently. Is there to be more than one coroner? " The justices of the peace," means collected, not individually. 2 *Roll's Ab.* 96, that the inquisition spoken of before oyer and terminer, and justices of the peace, where the body cannot be found, is an indictment at their session. If this is allowed, the office of coroner is abolished, and the fee, (though none is allowed to the justices by the fee bill,) would be claimed by them. The office of the coroner is a high prerogative. In England he is still elected. In 3 *B. & Ald.* 360, it is held that inquest in which the witnesses were not sworn by the coroner himself is void.

Mr. *Johnson*, (attorney-general) contra.

I wish to lay the whole before the court. The justice sets forth that he " was acting for the coroner:" but it is held that the coroner cannot act by deputy. 2 *Hale's P. C.* 57. This is the strongest objection. In England it would seem they have several coroners in a county. 6 *Pet. Ab.* 407; no precise number is required—in some counties six coroners; in some 4; in others 2. The power of the judges of the King's Bench is not confined to the court. They may act individually; if so, it is *ex officio*, as conservators of the peace. Thus courts and judges have the same power; and so have the judges of the oyer and terminer, and justices of the peace. A justice of the peace in Pennsylvania is as much a conservator of the peace as the chief justice. No precise case fixes their power; it flows from their duty as conservators of the peace. In that capacity it is important that they should act in cases of murder. If the coroner is sick or absent, &c., is the duty not to be performed? and ought not the same fees to be paid. It would be difficult in our large counties, where there is but one coroner, to get along without this power in the justices : and if so, it is by our common law well exercised by a justice, whose duties are of the same general class as those of the chief justice or the judges of the Supreme Court. Such inquisitions are held every day. In 2 *Hale's P. C.* 58, it is said that a coroner cannot make a deputy ; but if he do not inquire, the justices of the peace in oyer and terminer may ; and so may the justices of the King's Bench, though it is traversable. 6 *Barn. & Ad.* 408. Chief Justices in the King's Bench and also the other judges are sovereign coroners. 4 *Co.* 57, b. 4 *Inst.* 73.

Mr. *Meredith*, in reply.

The case in 3 *Barn. & Ad.* 360, shows that the coroner cannot act, except *super visum corporis*. If persons have improperly assumed jurisdiction, it is time it should be checked.

The opinion of the court was delivered by

GIBSON, C. J.—The prevalent notion that a justice of the peace has concurrent power to inquire into the circumstances of a sudden or violent death, upon view of the body, has doubtless arisen from inadvertence to the source of the coroner's authority. In England, and perhaps in Pennsylvania, justices of the peace have authority, in certain cases, to take inquisitions by the examination of witnesses; but the 4 Ed. 1, St. 2, which is in force with us, commands the coroner alone to go to the place where any one is slain or has suddenly died; and, by warrant to the bailiffs or constables, to summon a jury from the neighbouring towns to inquire into the manner of the killing, or the circumstances of the death. He is not expressly directed to take the inquest on view of the body, but a direction to that effect is to be inferred from the duty imposed on him of repairing to the spot; and it has always been held that an inquisition taken otherwise is void, particularly in the case of the *Welchmen*, (*Poph.* 109.) But it is because this species of inquisition, and no other, is entrusted to the coroner, and to him exclusively, that the common law inquisition, by the examination of witnesses before commissioners or justices, either of oyer and terminer or of the peace, must still be taken where the body cannot be found; as is said in *The King* v. *Parker*, (2 *Lev.* 141;) and the *King* v. *Aldenham*, (*Id.* 152.) In *Foxley's case*, (5 *Rep.* 111,) it is said to have been resolved in *Laughton's case*, by POPHAM, C. J., and the whole court, that if the body be cast into the sea, or buried so secretly that the coroner cannot have the view, the justices of the peace, justices of oyer and terminer, or others who have authority to inquire of felonies, may take a presentment of it. From the words of the statute it results also that the coroner's jurisdiction is a special one, and that no one else can take an inquisition in the manner prescribed. Accordingly, it was said in the *King and Queen* v. *Bunney*, (2 *Salk.* 190,) that if his inquisition be quashed, he must take a new one *super visum corporis* as he did before; but that if a *melius inquirendum* be granted on a *male se gessit*, the new inquiry must be before sheriffs or commissioners, not *super visum corporis*, but upon affidavits; for that none but the coroner can inquire *super visum corporis*, and he is no longer to be trusted. To the same effect is *Stanlack's case*, (1 *Vent.* 182,) in which it is said the King's Bench may inquire, or make commissioners to inquire; but not *super visum corporis*. In the case of the *Wardens and Commonalty of Saddlers*, (4 *Rep.* 57,) it was indeed said by Lord Coke to have been resolved by Chief Justice FINIEUX, in the reign of Henry the seventh, that an inquisition taken by the chief justice of the King's Bench, as supreme coroner of all England, upon view of the body of one killed in open rebellion, was good and worked a forfeiture of his estate. It is to be remarked of that case, that the resolution had regard to a forfeiture; and that no decision of a de-

pendent judiciary betwixt a sovereign so rapacious and his subject, ought to be drawn into precedent for any thing. The chief justice of the King's Bench is doubtless a coroner by virtue of his office, as others are coroners, without election, by charter or commission of privilege; and even were they coroners within the purview of the statute—and the authorities quoted show that they are not—it surely could not be pretended that justices of the peace are such. They are not coroners in name; nor have they ever been called so. In a few special cases they have power to take inquisitions by the testimony of witnesses; but they have neither part nor lot in the power confined by the 4 Ed. 1, from which alone authority to take inquisitions on view of the body is derived. It is indeed said by *Hawkins*, (B. 2, ch. 9,) that the statute is wholly directory and affirmative of the common law; but whether it be so or not, it permits none but the coroner to exercise the power specified in it, as we must suppose the common law did. It is in force, as I have said, in Pennsylvania; but I know of no authority of our own in relation to the point in contest, unless my decision in the *Commonwealth* v. *Brock*, may be called so. At a court of oyer and terminer, held by me as president of the eleventh judicial district at Wilksbarre, in 1814, the prisoner was capitally convicted of the murder of one Dixon; but a new trial was awarded on great consideration, because an inquisition *super visum corporis*, taken by a justice of the peace, had been put before the jury; and that was the first instance, I believe, in which a new trial was granted in a capital case, for any reason whatever. It results in the case before us, that the warrant, having issued as it did on an inquisition taken *coram non judice*, is illegal and void by the ninth article and sixth section of the constitution, which declares that no warrant to search any place or to seize any person or things, shall issue without probable cause supported by oath or affirmation.

Prisoner discharged.