It will be seen by reference to the case of The-State ex rel. vs. Malone, et al., that, the Supreme Court of Tennessee has decided that no appeal or writ of error lies from the judgment of a competent tribunal upon a case brought before it by writ of habeas corpus. Upon this question there has been some diversity of opinion and adjudication in the Courts of this country. In view, however, of the objects and purposes of this great constitutional remedy, it seems that the reasoning of the Court is conclusive as to the correctness of the decision. In this State there is no practice upon this subject established -by statute, save certain meagre provisions, which chiefly relate to the enforcement of the attendance of witnesses; and-indeed very few questions connected therewith, have ever been presented to our highest judicial tribunal. The Reporter has, therefore, deemed it an acceptable service to the profession and the public, to. transfer to *700 this volume, a learned treatise upon the writ of habeas corpus, and the practice connected therewith, originally contributed to the Law Magazine, for November, 1855, and reproduced in Messrs. Fish and Wharton’s American Law Register, (Philadelphia,) for March, 1856:
The Writ of Habeas Corpus.*
The liberty of the subject has from the earliest time been protected by our common law, as evidenced by the celebrated 29th chapter of Magna Charta, which declares (for it is but declaratory of the law) that, “ No freeman shall be taken or imprisoned, or disseised of his freehold or liberties, &c., or be any otherwise destroyed, &c., nisi per legale judicium pa-rium suorum vel per legem terras? “ No man,” says Lord Colee, in his commentary upon the above chapter of Magna Charta, “shall be taken, i. e., restrained of liberty, by petition or suggestion to the King or his Council, unless it be by indictment, or by presentment of good and lawful men” (2 Inst. 46). Thus much as to the great principle of personal freedom recognized by our law. Then as to the remedy for its invasion. “ If,” says the same authority (4 Inst. 290), speaking of the forest laws, “if it be demanded — what if a man be unjustly imprisoned under color of those laws, and afterwards offer sufficient pledges, and they be not taken, what remedy is there for the plaintiff? The answer is, that in the- term time he may have, ex mérito justitice, a habeas corpus out of the King’s Bench, or out of the Court of Common *701 Pleas, or of the Exchequer; or out of the Chancery, either in term time or vacation; and upon the return of the writ he shall he bailed.” So in the Institute just cited (fo. 182), after designating as “odious” the unjust imprisonment or detaining of any freeman in prison, after mentioning various remedies, now obsolete, which “the law hath allowed for the relief and ease of the prisoner,” Lord Coke adds, “ but the readiest way of all is by habeas corpus, in the term time, or in vacation, out of Chancery.” And to return once more to the 2d Inst. (fo. 55). we there read: “ Now it may be demanded, if a man be taken or committed to prison, contra legem terree, what remedy hath the party grieved?” To this it is answered — 1st, That every Act of Parliament made against any injury, mischief, or grievance, doth either -expressly or impliedly give a remedy by action to the party wronged. 2dly, The party falsely imprisoned may indict for the injury done him. 3dly, He may have a habeas corpus — upon which writ the gaoler must return by whom his prisoner was committed, and the cause of his imprisonment; and if it appeareth that his imprisonment be just and lawful, he shall be remanded to gaol; but if it shall appear to the Court that he was imprisoned against the law of the land, they ought, by force of this statute (Magna Charta), to deliver him; if it be doubtful, he may be bailed.
Various cases, ancient and modern, both prior to and since the Habeas Corpus Act, might be cited to show that the writ of which we are now speaking lies at common law. “ This invaluable writ,” says Lord Campbell (Ex parte Sandilands, 21 L. J., Q. B. *702 342), “ could always be obtained where a person had been improperly deprived of liberty. From the earliest times, before the Habeas Corpus Act, a writ issued in such cases, calling upon the party detaining to show if any just cause existed for the detention — but this was always on the supposition that liberty was interfered with.”
In Thomlinson's case (12 Rep. 104), we have an instance of habeas corpus at common law. It there appears that the said Thomlinson had been committed by the Court of Admiralty for refusing to answer 'on his oath to certain interrogatories proposed to him in a suit there instituted, and accordingly he brought his habeas corpus, to which the marshal of the prison of the Admiralty returned, that his prisoner “ had contumaciously refused to submit himself to examination and this return was held to be insufficient, on the ground that it was too general, and because it did not specify for what cause or matter the prisoner had been examined. (See also Bourn's case, Cro. Jac. 543; a mem. in Cro. Car. 466, for allowing prisoners confined in certain gaols, who could give bail, to go at large when the plague was prevalent in London; Ex parte Besset, 6 Q. B. 481).
Long, indeed, before the time of Coke, the writ of habeas corpus may be clearly proved to have been in use, and in the reign of Henry VI. “it seems to have been familiar to, and well understood by the judges,” as remarked by Mr. Fry, in his learned and interesting dissertation upon the writ of habeas corpus, prefixed to his Report of the Canadian Prisoner's case, p. 7. *703 (Reported also as Leonard Watson’s case, 9 Ad. & E. 731; and Re Parker 5 M. & W. 32.)
An examination of precedents has, moreover, shown that the remedy by habeas corpus was originally used as between subject and subject, rather than by a subject against the Crown; but from the reign of Henry YII. cases are to be met with in which the writ was sued against the Crown; and in the reign of Charles I. the arguments in Sir Thomas Darnell's case, 3 State Trials, p. 1, show that the nature of this writ as an admitted constitutional remedy, was at that time well appreciated. The case just cited, as the learned reader need not be reminded, led the way to the Petition of Right (3 Car. 1 c. 1) which contains an emphatic protest against the denial of the writ of habeas corpus, and against illegal imprisonment thereby occasioned. (See ss. 5, 10; see also Hallam’s Constitutional History, vol. 1, p. 414, &c.)
The writ of habeas corpus ad subjiciendum, with which we are on this occasion exclusively concerned, is, to use the words of Blackstone, “the great and efficacious writ in all manner of illegal confinement. It is directed to the person detaining another, and commands him to produce the body of the prisoner, with the day and cause of his caption and detention, ad faciendum, subjiciendum, et recipiendum, to do, submit to, and receive whatsoever the judge or Court awarding such writ shall consider in that behalf.” (3 Bla. Com. 131.) In order, however, to justify issuing the writ at common law, it must be shown that liberty is being interfered with — that the party on whose behalf the application professes to be made is coerced, and *704 not a free agent. The writ in question accordingly will not be granted on the application of a man to bring up the body of his wife, unless it be shown that she is under coercion, or subjected to imprisonment— this case obviously differing from that of an infant, whose parent has the right to the custody of the child, so that, if of tender years, the Court will order it to be delivered to the father' — but the husband has at common law no such right to the custody of his wife, (Ex parte Sandilands, 21 L. J., Q,. B. 342). Re Hakewill (12 C. B. 223),* indeed, is a distinct authority to show that the father is legally entitled to the custody of his legitimate infant children. “ The case of illegitimate children obviously stands upon a totally different footing” (Id. per Cresswell, J.) In Re Lloyd (3 M. & Gr. 547), a writ of habeas corpus had been obtained by the mother of an illegitimate female child, for the pui’pose of bringing her up from the custody of a party with whom she had been placed by her putative father. The child, about eleven years of age, was thereupon brought into Court in obedience to the writ, and was asked if she wished to go with her mother, and expressing a disinclination to do so, was allowed to retire with her attendant. This case forcibly illustrates the general rule that a habeas coipus will be granted only where the party on whose behalf it is applied for is under coercion or restraint. So in Ex parte Child (15 C. B 238),† a rule having been obtained or a habeas corpus to bring up a lunatic, confined in an asylum in this country under Irish medical certificates, the Court discharged it with costs, there *705 being no affidavit to show that the party promoting the application was duly authorized by the lunatic. “ A mere stranger,” remarked the Chief Justice of the Common Pleas, “has no right to come to the Court and ask that a party who makes no affidavit, and who is not suggested to be so coerced as to be incapable of making one, may be brought up by habeas to be discharged from restraint.”*
There does not appear, however, to be any technical or arbitrary restriction in regard to the purposes for which the writ which we are now considering, may issue. It is due to any person complaining of unlawful detention, and is employed for the purpose, of removing prisoners, of bringing them up to be bailed— of bringing up infants improperly detained, &c., &c. (Re Belson, 7 Moore P. C. Cas. 114); the form of writ of habeas corpus having anciently varied according to the precise object for which it was required. Before *706 the writs were in English, when the object was to remove a prisoner, this writ was expressed to be ad faciendum ei recipiendum, &c.; “ to do and receive,” &c., as is now expressed in the writs issued by the Courts of Common Law for the like purpose. Where the object was to remove or bring up a pi’isoner in custody of the sheriff, gaoler, &c., the writ commanded that the prisoner should be brought before the Court wheresoever it then was, “with the cause of his detention,” &c.; whereas, where the- object was the bringing up infants or others detained in private custody, the party detained was to be brought before the Court or Judge on a particular day, and at an hour and a particular place named in the writ; and the "clause cum cuasis was omitted. Of late years there are abundant precedents of this in the case of bankrupts committed by commissioners, infants withheld from parents and guardians, &c. (See per Ld. Langdale; Re Belson, supra; Corner’s Pr. of Crown Off. App. p. 63; Tidd. Forms, 8th ed., p. 123; Ex parte Crowley, 2 Swanst. 48).
The habeas corpus act (31 Car. 2, c. 2), as indeed its preamble distinctly shows, only enforced the common law. It applies exclusively to the case of a person imprisoned for a “ criminal or supposed criminal matter,” and enacts — That on complaint and request in writing, by or on behalf of any person committed and charged with any crime (unless committed for treason or felony, expressed in the warrant, or convicted or charged in execution by legal process), the Lord Chancellor, or any Judge, shall, on viewing a copy of the warrant, award a habeas corpus for such prisoner, immediately returnable, and upon the return made, shall *707 discharge the party, if bailable, upon giving security to appear and answer the charge. That the writ shall be returned and the prisoner brought up within a limited time, according to the distance, not exceeding in any case twenty days. The officers and gaol-ors, neglecting to make due returns, shall be fined. That no person once delivered by habeas corpus shall be recommitted for the same offence. That any prisoner may move for this writ in Chancery, or in any Court of common law, and that the Chancellor or Judge denying the same shall forfeit to the party grieved the sum of £500.
A few remarks suggest themselves in reference to the above named statute.of Car. 2. “ It is,” says Mr. Hallam (Constitutional Hist. vol. ii. p. 352-3), confirming what has been already stated in this article, “ a very common mistake to suppose that this statute of Car. 2 enlarged in a great degree our liberties, and forms a sort of epoch in their history. But though a very beneficial enactment, and eminently remedial in many cases of illegal imprisonment, it introduced no new principle, nor conferred any right upon the subject. From the earliest records of the English law, no freeman could be detained in prison, except upon a criminal charge or conviction, or for a civil debt.” “ It was not,” as the same learned writer further observes, “ to bestow an immunity from arbitrary imprisonment,” which is abundantly provided in Magna Charta, that the statute of Car. 2 was enacted; but to cut off the abuses by which the government’s lust of power and servile subtlety of Crown lawyers, had impaired so fundamental a privilege.”
*708 Again, it is clear, from the whole scope of the above mentioned statute (31 Car. 2, c. 2), that it applies to and regulates the right to the writ of habeas corpus in criminal or supposed criminal cases only; and that it has for its principal object the causing persons in custody in such cases to be brought to trial. The statute, therefore, has no application, save where a party has been imprisoned and is in custody on some charge for which he is liable to be tried. It does not extend to the case of one in custody under process issued in a civil cause. Nor does it even apply where a person is in custody under a commission of rebellion, issued out of Chancery, for not appearing in a suit. (Cobbett vs. Slowman, 9 Exch. 633; affirming S. C. 4 Exch. 747). The statute 56 Geo. 3, c. 100, however, extends the remedy by habeas corpus to other than criminal cases; for it enacts that persons confined otherwise than for some criminal matter, or by process in any civil suit, may, on application to a judge in vacation by affidavit, showing probable and reasonable ground for his interference, obtain a writ of habeas corpus.
The writ of habeas corpus ad subjiciendum is not grantable, either at common law or under the statute of Car. 2, as of course, and without any cause being shown for granting it to the Court; the application must be supported by affidavit, setting forth some ground for it, on which the Court may exercise its discretion. (Hobhouse’s case, 3 B. & Ald. 420).* *709 Assuming' that such ground is shown, the ordinary modern practice seems to be to grant, in the first instance, a rale to show cause why the writ in question *710 should not issue; though under peculiar circumstances, the writ will be allowed to go immediate, as in in Ex parte Witte (13 C. B. 680), where the writ was granted on the application of the father of an infant of tender years, commanding the mother, from whom the applicant' had been divorced, to produce the child; the affidavit in support of the motion stating, that if notice thereof were given to the other parties, the child would probably be removed beyond the jurisdiction of the Court. In the case here mentioned, the writ was handed up to the Chief Justice, and signed by him in Court.
The writ of habeas corpus is a prerogative writ, and by the common law it lies to any part of the King’s dominions, for the King ought to have an account why any of his subjects are imprisoned. (Bac. Abridg. Hab. Corp. B. 2.) In Rex vs. Cowle, 2 Bur. 834, 6, Lord Mansfield states very concisely the territorial limits within which this writ may run. He says: — “To foreign dominions, which belong to a prince who succeeds to the throne of England, this Court (Queen’s Bench) has no power to send any writ of any kind. We cannot send a habeas corpus to Scotland or to the Electorate (Hanover), but to Ireland, the Isle of Man, the Plantations, and to Guernsey and Jersey we may; and formerly it lay to Calais, which was a conquest, and yielded to the Crown of England by the treaty of Bretigny,” concluded, in 1360, by Edward III, with the Crown of France. In Crawford's case (13 Q. B. 613), it was, in express accordance with this opinion, held that the writ would run to the Isle of Man. And that the *711 writ of habeas corpus ad subjiciendum has legal force in the island of Jersey and must be obeyed there, was established in Carus Wilson’s case (7 Q. B., 984). “Nor,” says Lord Denman, in that case, “can we (the Court of the Queen’s Bench) be parties to the encouragement of any doubt whether the inconveniences that may possibly arise in giving effect to the writ will justify us, or any judge who may possess the power, in declining the exercise of it in behalf of any person who lawfully requires it.”
The question whether or not the Lord Chancellor can issue this writ in vacation was much discussed in Crowley’s case (2 Swanst. p. 1,) where Lord Eldon came to the conclusion that it could then issue; for the writ of habeas corpus is a very high prerogative writ, by which the King has a right to enquire the causes for which any of his subjects are deprived of their liberty — a liberty most especially regarded and protected by the common law of this country. And as Lord Coke says, in his reading on Magna Charta (2 Inst. 53,) this writ is to be granted at all times out of the Court of Chancery, for that Court is officina justitice, and is ever open, and never adjourned, so as the subject being wrongfully imprisoned may have justice for the liberty of his person, as well in the vacation time as in the term. Similarly, in Re Belson (7 Moore P. C. Cas. 114,) it was held that the Lord Chancellor, or the Court of Chancery in England, has, by its common law jurisdiction, authority, as general as the common law Courts have, to issue writs of habeas corpus, and can issue such writs in vacation, “ when it is supposed, at least that such writs cannot *712 be issued by the other Courts” (Judgmt. Id. 131, citing 2 Inst. 53, 55; 4 Inst. 81, 182;) a remark, however, which is directly opposed to the considered judment of the Court of Queen’s Bench, in the Canadian Prisoner’s case, where the right of a judge of that Court to grant this writ at chambers in vacation time was distinctly asserted, and where, in so deciding, Lord Denman says, “We deserve herein neither the praise nor the censure that may belong to innovation: we are merely abiding by an established practice; ” and his lordship refers to various ancient precedents of writs so issued. After the above decision of the Court of the Queen’s Bench, sustained by the authorites therein cited, it is .certainly rather singular to find Lord Langdale remarking, in Re Belson, to the effect above indicated.
Assuming that the writ of habeas corpus has issued, it will not be quashed for matter that can be properly returned to it. “ As a general rule, that is certainly the most convenient course, most just to the party applying for the writ, and most in furtherance of the great object for which our constitution has appointed it.”' (7 Q. B. 1001.) The return to the writ being then made in due course, must specify the cause of detention, and must distinctly set forth the grounds on which the prisoner is kept in custody. It varies, therefore, according to the circumstances of the case.
On the return day of the writ, the prisoner is brought up and produced before the Court; and if the inadequacy of - the return is to be argued, the prisoner’s counsel will thereupon contend against its sufficiency, *713 and move the discharge of the prisoner. The counsel supporting the return is then heard, the prisoner’s counsel replies, upon which the Court either remands,' or if the return be bad, discharges the prisoner: (Reg. vs. Baines, 9 Ad. & E. 213 n.; Re Douglass, 3 Q,. B. 825; Re Peerless, 1 Q,. B. 143; Hammon's case, 9 Q,. B. 92; Seth Turner's case, Id. 80; Tordoff's case, 5 Q,. B. 933.)
Many cases are to be found in the books, which throw light upon the nature of the return which should be made to a writ of habeas corpus, and the degree of sufficiency required in it. Before considering some of these cases, however, we may remind the reader that the statute (31 Car. 2, c. 2) is binding upon all persons whatsoever who have prisoners in their custody; and it is therefore competent for the judges to have before them persons committed by the Houses of Parliament for contempt. It has, however, been established, that the cause of commitment by either house for breach of privilege, or for contempt, cannot be inquired into by courts of law, but their “ adjudication is a conviction, and their commitment in consequence an execution.” Nor, indeed could any rule different from that just stated be adopted consistently with the independence of either House of Parliament, (Case of the Sheriff of Middlesex, 11 Ad. & E. 273; May’s “ Law of Parliament,” 2d ed. p. 69, et seq.)
The proceedings in connection with the writ of ha-beas corpus, and the return thereto, were much investigated in the Canadian Prisoner's case, (9 Ad. & E. 731.) The return to the writ of habeas corpus is there contrasted with a special plea of justification in *714 an action for false imprisonment, in this manner: — . The Courts observe that a party wrongfully imprisoned has two modes of proceeding, — one, by bringing his action for false imprisonment against the party who has him in custody; the other, by applying for writ of habeas corpus. If he proceeds by action for false imprisonment, the defendant must either set out his’ ground specially in his plea, or, if allowed, in evidence ; but either way, he will be bound to prove the truth of all the facts put in issue, — i. e., he will have to establish the truth of every fact material to show the legality of the imprisonment. When however, the party agrieved proceeds not by action, but by applying for a writ of habeas corpus in a summary way, it will not be right for the defendant bringing up the body to specify all matters accounting for the custody with the same minuteness as in an action for false imprisonment. Nor is it necessary that the return should be verified by affidavit. Should the return, indeed, prima facie, appear untrue in any particular, the party making such return will have to account for it, and to state or explain why he has so dealt with the Court; and this he will in practice be required to do, in answer to a rule nisi for an attachment granted against him (Canadian Prisoner's case, Fry’s Rep. p. 91.) But, still, it does not seem to follow, that though the return be false, an attachment will be granted, provided the party implicated can show that there has been some mistake or misconception on his part, or something to protect him from the expression of its displeasure by the Court. If such cause be shown, an amendment will probably *715 be allowed in the return, so as to make it accord precisely with the facts.
If the return to the writ be bad, the Court may allow, or even order, an amendment to be made. In Re Power (2 Russ. 583,) where the return to a habeas corpus set forth a warrant of commitment imperfectly, Lord Eldon, after motion to discharge the prisoner, consulted the Chief Justice of the Queen’s Bench on the question of amendment; and the opinion of those learned persons was, that the Chancellor could and should order the goaler to amend his return, by annexing thereto a copy of the warrant in question, or the warrant itself; “and in that case,” Lord Eldon observed, “it would be a strong thing to say that the merits of a committal are to be tried merely by the return to the writ, however erroneous that return may be. If such were the rule, then the person' who makes the return to the writ would, in fact, by making a return short of the truth, assume to himself the power of discharging a prisoner who may have been properly committed.” Upon this opinion the Court of Queen’s Bench acted, in Re Clarke (2 Q. B,, 619.) The Canadian Prisoners’ Case, as remarked by Jervis, C. J., in Re Hakewill, (12 C. B., 228,) does, however, seem to show that the return to a writ of habeas corpus must be taken to be true, and need not be verified by affidavit. It was, indeed, doubted in that case whether there be any mode (other than by action) of impeaching the truth of such return, or of introducing new matter. Were it not for this decision, one might have thought that it was competent to the party at whose suit such a writ is obtained, to impeach the return upon *716 affidavit, or to traverse it, and go to a jury, as well as to argue upon the return that it does not justify the detention.*
*717 Upon this part of our subject the practice of the superior courts may perhaps be considered as not altogether settled, nor so far as it is settled, does it seem to rest on a very satisfactory basis. Cases do no doubt occur in which after the return to the habeas, fresh matter may be brought before the court by affidavit : thus, if the return set forth a commitment under the warrant of justices of the peace good on the face of it, it will be competent to the prisoner to show-by affidavit that the arrest took place on a Sunday, and was illegal under the statute 29 Car. 2, c. 7, s. 6; for “ if that were not so, all privilege would be totally unavailing, and a party arrested upon a good warrant, under circumstances which made the arrest illegal, Avould have no means of obtaining his liberty.” Re Eggington, 2 E. & B. 717, 729, Swan vs. Dakins. It is, however, quite clear that the return to a habeas cannot under any circumstances, be traversed (Corner’s Cr. Off. Pr. pp. 116, 117). And whether a writ of habeas corpus be at common law, or within the provisions of the statute 56 Geo. 3, c. 100, it is not every affidavit that can be received on the return to the writ. Counsel, therefore, who apply for time to file affidavits, must suggest to the court their nature. In Dime’s case (14 Q. B. 554), the return to a writ of habeas corpus, directed to the keeper of the Queen’s Prison, set forth an order of committal of the prisoner by the Vice-Chancellor of England, for breach of an injunction granted by the Lord Chancellor. And on *718 motion for time to file affidavits, with a view to showing that the Chancellor was personally interested in the matter before him, and that his injunction was void, the court observed: “ The return shows a committal by a court of competent jurisdiction, acting within its jurisdiction. The attempt is to show that that court should not have adjudicated as it did. It has, however, been decided that the courts of common law will not sit in review of a committal by the Court of Chancery.” (See also Clarke's case, 2 Q,. B. 619; Ex parte Andrews, 4 C. B. 226.)
In Carus Wilson’s case (7 Q. B. 984,) the return to a writ of habeas corpus, directed to the viscount and gaoler of the Island of Jersey, stated that the prisoner was in custody by virtue of the sentence of the Royal Court at Jersey, passed upon him for contempt, in conformity with the law there in force as set out in the return. It was proposed to show by affidavit that the law was untruly set forth; but it was held that this could not be done, “for” said Lord Denman, “ when it appears that the party has been before a court of competent jurisdiction, which court has committed him for a contempt or any other cause, I think it is no longer open to this court to enter at all into the subject matter. If we were to do so, we should constitute ourselves a Court of Error from such other court, and should be constantly examining whether the circumstances, the existence of which was proved, warranted the opinion which such court had formed. Suppose a party were convicted of murder, and ordered to be executed in three weeks, could we, while he was awaiting the execution of his sentence, receive *719 a statement that he was improperly convicted, that evidence was improperly admitted, or that the offence was not murder ? The security which the public has against the impunity of offenders is, that the court which tries must be considered competent to convict.” Hence the principles of the exception which runs through the whole law of habeas corpus, viz: that the form of writ does not apply where a party is in execution under the judgment of a competent court (7 Q. B. 1008-9.)
Crawford’s case (13 Q. B. 613) clearly affirms the doctrines asserted in Carus Wilson's case, viz; that one of the superior courts will not constitute itself a Court of Appeal to discuss the propriety of a committal for contempt by an inferior or local court, provided the form of commitment be good, according to the law of the place where it was made, however much such law may differ from that which is here recognized. On referring to Carus Wilson’s case, it will be seen that the commitment there was for an alleged contempt in open court; whereas, Crawford’s case clearly establishes that a court of record has not merely such power vested in it, but also that of committing for a contempt in publishing,. whilst the court is not sitting, a libel upon its proceedings.
Again, in Brenan’s case (10 Q. B. 492,) a writ of habeas corpus was issued to the Governor of Millbank Prison, and the return thereto set forth that the individuals on whose behalf the writ was moved for, had been convicted in the Royal Court of Jersey of the crime of breaking into a shop by night, and stealing therein, that court being competent to try and punish *720 for such offence; that the court had passed a sentence of transportation upon the prisoners; and that the Secretary of State had issued his warrant for removing the prisoners from Jersey to Millbank, with a view to carrying the said sentence into effect. This return was objected to, on the ground that the power of the court of Jersey to punish by transportation was not shown; but to this Lord Denman answered, “We think that the court having competent jurisdiction to try and punish the offence, and the sentence being unreversed, we cannot assume that it is invalid or not warranted by law, or require the authority of the court to pass the sentence to be set out by the gaoler upon the return. We are bound to assume prima facie that the unreversed sentence of a court of competent jurisdiction i's correct; otherwise we should in effect be constituting ourselves a Court of Appeal, without power to reverse the judgment.”
On the same principle, the Court of Common Pleas has refused a habeas corpus to bring up a prisoner under sentence of the Court of Queen’s Bench for a misdemeanor, in order that the validity of the warrant under which he was committed might be discussed; the proper remedy in such a case being by writ of error (Re Dunn, 5 C. B. 215.) “If,” said Wilde, C. J., “we were to accede to this application — which certainly is one of the first impression — it would lead to consequences that never were contemplated. It would follow that every sentence pronounced by the Court of Queen’s Bench would be subject to be reviewed summarily even by a judge at chambers.” So, if the Court of Bankruptcy refuse a certificate of conformity, *721 the court at Westminister will not, on motion for a habeas corpus, inquire into the refusal. . (Re Cowgill, 16 Q. B. 336; Ex parte Partington, 6 Q. B. 649; see also Ex parte Bradbury, 14 Q. B. 15.) In Catherine Newton's case, 13 Q. B. 716, an application was made to the Court of Queen’s Bench, under the following circumstances: The prisoner had been put on her trial for murder, and the jury had been discharged by order of the judge, not being able to agree upon a verdict. The prisoner was remanded to gaol, and thereupon the court was moved for a rule calling upon the prosecutor of the indictment to show cause why a habeas corpus should not issue to the keeper of the gaol, commanding him to bring up the body of the prisoner. After cause had been shown for the Crown, the court discharged the rule, on the ground that the original warrant of commitment remained still in force, not having been affected by the proceedings at the trial, and that the custody in which the prisoner was, was consequently legal. And lastly, in Re Newton, 16 C. B. 97, the Court of Common Pleas refused to grant a habeas ' corpus to bring up the body of a prisoner who had been convicted at the Central Criminal Court, on the ground that the offence charged had in fact been committed at a place out of the jurisdiction of that court. The proper course in such a case is to apply to the Attorney General for his fiat for a writ of error coram nobis, on the ground that there is error in fact dehors the record; the Attorney Gem eral having a discretion to grant' or to refuse the application; which is not to be granted capriciously or as a matter of course.
*722 The cases just cited will sufficiently show the nature of the return most commonly made to the writ of ha-beas corpus* And now we will attempt to recapitu *723 late some of the more important conclusions respecting *724 the writ of habeas corpus ad subjiciendum, to be drawn *725 from, wbat has been. above said. This wait may issue either at common law, or under the statute of Car. 2, or that of Geo. 3; and difficulty sometimes exists in satisfactorily determining from which of these sources (if such an expression be permitted) the wait in any particular case ought to be regarded as proceeding. It is, however, essential to look narrowly at any reported decision with reference to this precise point, before attempting to draw from it any inference. Again, the writ itself will issue not of course, but on reasonable ground shown by affidavit, and will vary somewhat in form, according to the circumstances under which the detention or imprisonment complained of has occurred. Nor, when once issued, will the writ be quashed for matter which can properly be returned to it. Assuming' that -it is regular, the ground of detention must be set forth in the return: if insufficient or manifestly false, the return must be quashed and the prisoner will be discharged; or, if the facts justify such a course, an attachment will be allowed to issue *726 against the party making the return. It may, perhaps, be said, and would undeniably be true, that the absence of a right .of traversing the return to a writ of habeas corpus detracts — in practice somewhat — in theory very considerably' — from its efficacy as a remedial process; and yet, though defective as a remedy in some respects it be, in this writ, known only to us and to. our brethren of the United States of America, we think we recognize the surest safeguard for the subject against the license of the Crown — the 'most obvious and approved pledge for the observance of that duty which is imposed on our judges by those memorable words of Magna Charta' — nulli vendemus, nulli negabimus, au% differemus, justitiam vel rectum — justice shall neither be delayed, denied, nor sold, but shall be administered impartially to all.

 Anonymous.

22 Eng. Lav and Eq. Rep., 398.

 29 Eng. Lav and Eq. Rep., 259.

 It is not absolutely necessary that either the petition for the writ, or the affidavit, should be by the party in detention, though such a course is more regular. In the Hottentot Venus’ Case (13 Bast, 185,) the woman was incapable to make either one or the other. Indeed, it would seem that in some cases the affidavit of the party in detention would be insufficient (U. States vs. Wyngall, 5 Hill, 16; but see DeLacy vs. Antoine, 7 Leigh, 438), and so far as regards the petition, it has been said, generally, that the person impris-onec( or illegally detained may petition for the writ, or any other person may do so for him (State vs. Philpot, Dudl,, 46, and see People vs. Porter, 1 Duer, 709;) a more guarded decision is, that the writ may issue at the instance of the party detained, or any other person who has a right to his custody. (Holsey vs, Trevillo, 6 Watts, 402; compare Exp, Williamson, 3 Am, Law Register, 729, 4 ib., 13.) It will not, however, be issued at a third party’s instance against the consent of him in detention (Rex vs. Roddom, Cowp., 672; Rex vs. Wiseman, 2 Sm., 617; Exp. Grocot, 5 D. & R., 610; Commonwealth vs. Robinson. 1 S. & R., 353; and see In re Parker, 5 M. & W., 32, S. C. and S. P., but different name, 7 Dowl., 208.) Neither will it be issued at the instance of a third party where the person confined is estopped, by his own act from the benefit of the writ. (Exp. Ball, 2 Grattan, 588.)

 That Courts and. Judges may, in their discretion, grant or refuse the writ, whether the application is founded on the statute or on the common law, there can he ho question. Rex vs. Marsh, 3 Burr. 27; Ducastro’s case, *709 Fortes, 195; Shiever’s Case, 2 Burr. 765; Anonymous, 2 W. Bl., 1324, and 2 Ld. Keny. 473; Rex vs, Parkyns, 3 B. & Ald. 679 (n); Rex vs Dugger, 5 B. & Ald. 791, and 1 D. & R., 460; Jones’ Case, 2 A. & E., 436; Exp. Knight, 2 M. & W. 106; Jones vs. Danvers, 5 M. & W. 234; Exp. Rogers, 7 (English) Jurist, 992; Exp. Wilson, 6 Cranch Sup. Ct., 52; U. S. vs. French, 1 Gallis. 1; Exp. Watkins, 3 Pet. 193; Exp. Barry, 2 How. 65; Exp. Dorr, 3 How. 103; Riley’s Case, 2 Pkg. 172; Nickols vs Giles, 2 Root., 461; Husted’s 1 Johns. Cases, 136; Exp. Lawrence, 5 Binn. 304; Com. vs. Robinson, 1 S. & R. 353; Reddill’s Case, 1 Whart. 445; Exp. Royster, 1 English (Ark.) 28; Exp. Williamson, 4 Am. Law Register, 27; and it is difficult to see whence a contrary opinion could have been derived, though it undoubtedly exists, not only among laymen, but to some extent, in the profession itself. Perhaps sufficient attention has not been paid to the fact that this — though a writ of right, is not a writ of course, a distinction not always observed, by judges even, when speaking on the subject.
The decisions which tend to a contrary doctrine from that held by the majority of cases are very few, and we are not at present aware of more than two American ones. White vs. The State, 1 Sm. & Marsh. 149; and Wright vs. Johnson, 5 Pike, 687; in the latter of which the startling doctrine was held, that a mandamus would issue from a superior court to oblige an inferior tribunal to issue a habeas, corpus.
Though the general principle seems to be, as stated in the text, that the application must be grounded on affidavit, yet from the necessity of the case, there are exceptions to the rule. Thus in Archer’s Case (Ld. Raym. 673) a habeas corpus was granted to bring up a daughter from a father’s custody, merely on sight of a letter from her, alleging ill usage; so where a sheriif was in custody of a coroner on attachment, the writ issued for the sheriff without affidavit. (Rex vs. Whaley, 1 Chitt. 249.) In Rex vs. Turlington (2 Burr. 1115) a habeas corpus issued to the keeper of a mad house to bring up a patient, the writ being grounded on an examination of the patient by competent parties, ordered by the Court, and a report of no apparent madness. And where, before 31st Car. II, a husband and wife were taken on a capias upon an obligation sealed by them both, the King’s Bench held that, habeas corpus for them might issue, without motion, even. (Slater vs. Slater et ux 1 Levinz, 1.)
In New Jersey (State vs. Lyon, Coxe, 403) and Georgia, (State vs. Philpot, Dudl. 46,) it has been said, that though some probable cause — some adequate ground — must be given, before a judge will issue the writ, yet it is immaterial how this cause or ground is arrived at; and no particular method, as by affidavits, can be required.

 On general principles, and by common lair, tlie return was absolutely conclusive, could not be in any way controverted or pleaded against, and tbe relator was left to Ms action for a false return (Swallow vs. London, 1 Siderf. 287; Hutchins vs. Player, Bridg. Judgts. 274; Wilm. Notes, 112; Bushell’s Case, Vaugh. 135, S. C. 1 Freem. 1, 2 Sir T. Jones, 13 ; 2 W. Bl. 1210 (n;) Rex vs. Fenwick, 3 Sm. 309; Exp. Gill, 7 East, 376; People vs. Chegary, 18 Wend. 637; Mercein vs. The People, 25 Wend. 64;) this strict rule, however, had some relaxations, parties being allowed to confess and avoid the return, though not to controvert it (2 W. Bl., 1210 note;) and the eourts refusing to consider themselves bound by a manifestly false return (Hutchings vs. Player, Bridg. Judgts., 274,) though as to what should be the test of falsehod in a return, there was not perfect agreement.
The inconvenience of the doctrine became so great as to require and obtain the interposition of the legislature both in England, and probably, all of the United States ; and under the provisions of the statutes so enacted, the truth of the facts stated in the return may, generally, be controverted and investigated. (Hallam Const. Hist., Cap. XXII; Exp. Beeching, 4 B. & C. 136; S. C. 6 D. & R., 209; In re Martin, 2 Bail Ct. R., 33; In re powers, 25 Verm. (2 Deane, 261.) But where, in England, a party committed by Justices of the Peace in default of sureties was brought up, with this return on habeas corpus, the court refused to hear affidavits controverting the facts alleged in the articles of the peace, saying that St. 56 Geo. Ill c. 100, had not affected the practice in that respect (Reg. vs. Dunn, 12 A. & E., 699; and see Rex vs. Rogers, 3 D. & R., 607.) The English Act not extending to cases of criminal or supposed criminal character.
The conclusiveness of the judgment or sentence of a court or officer of competent jurisdiction is, however, in no way affected by opening the questions of fact to investigation; the rule, it is submitted, being that while all the facts, and probably the law, passed upon or decided by the judgment or sentence in question are forever and conclusively put to rest thereby, except under process in the nature of appeal all other facts alleged in the return, and indeed the existence of that judgment or sentence, are fully open to contradiction and disproof (3 Pet. 193, 202: 3 McLean, 89; 7 Wheat. 38; 2 W. Bl. 754, S. C. 3 Wils. 188; 6 [English] Jurist. 757, S. C. 2 G. & D. 780, 2 A. & E. N. S. 619; 11 A. & E. 273; 1 Blackf. 166; 2 Sand. 724; 9 [English] Jurist, 394; 11 [English] Jurist, 775; 25 Wend. 438, S. C. 1 Hill, 377; 4 Pa. L. J. 265; 3 Sm. 369, 11 Missou, 661; 1 Ashm. 10; T. U. P. Charlt. 184; 4 Barb. 31; 4 Harringt. 572, 577; 9 Wend. 212; 1 Barb. 340; 5 Cow. 39; 6 Whart. 269; 5 Hill, 164; 1 Sandf. 701; 1 Barb. 248; 3 McLean, 326; 1 Watt, 66; 4 Johns. Ch. 106; 4 Dall. 412; 1 Dall. 135.)
Though where a party is committed to answer a charge of felony, the *717 court cannot receive exculpatory evidence in order to discharge (People vs. M’Leod, 25 Wend. 483, S. C. 1 Hill, 377;) yet such evidence may he received in order to Regulate the hail (State vs. Asselin, T. U. P. Charlt. 184.)

The return must be certain and direct (Hutchins vs. Player, Sir O. Bridgm. Judgts. 274,) and must distinctly answer both the taking and retaining (Warman’s Case, 2 W. Blackst. 1204.) Where the return was “I had not at the time of receiving this writ, nor have I since had the body of A. B. detained in my custody, so that, &e,” it was held bad, as not showing that A. B. was not in respondent’s power, and the word “detained” was looked upon as ambiguous when standing thus alone. (Rex vs. Winton, 5 T. R. 89.) In Eden’s Case (2 M. & S. 226) on habeas corpus for a person held as an apprentice, but alleged to be over 21 years of age, the return set forth a custom to take apprentices aged between 14 and 21 to serve for seven years or more; but this was held to be bad, as not showing the party to have been between those ages when apprenticed. When, before 31 Car. II, the return to a plu-ries habeas corpus was, that no such person was in custody at the time of receiving that writ, nor had been since, .it was held to be bad for non constat that the person in question was not in custody when the original was served. (Emerton vs. Viner, 3 Keb. 434, S. C. 2 Levinz, 128, Freem. 389.) A return “the within named S. S. is not in my custody,” is insufficient, as not also stating that S. S. was not in the respondent’s possession or power. (In re Stacey, 10 Johns. 328.) Where habeas corpus was addressed to the sheriff of “Dale,” who, before the return, had ceased to be sheriff, and his successor returned “langumdm,” the return was held bad, for it should have been by both sheriffs, the first that he had the body and delivered it to the new sheriff, and the second “languendus” (Peck & Cresset’s Case—Pasch. 26 Car. II ctd. Bac. Abr. Tit. “ Habeas Corpus,” pl. 7;) less particularity is required in a return after conviction than before (Rex vs. Hawkins, Fortesc. 272;) neither is there any necessity for a direction to the return, and if any such exists, it is surplussage. (Crosby’s Case, 2 W. Bl. 764, S. C. 3 Wils. 188.)
Generally, the adjudication of a Court of Becord, or of an officer having jurisdiction, between the same parties and on the same state of facts, will be a sufficient matter of return, (Marcein vs. The People, 25 Wend. 64; Com. vs. Wetherhold, 4 Pa. L. J. 265; Exp. Toney, 11 Missou. 661; Yancey vs. Harris, 9 Ga. 535;) and where the party detained is held under such an adjudication, the regularity of the proceeding is not examinable upon habeas corpus, (Com. vs. Keeper, &c., 1 Ashm. 10; Com. vs. Leckey, 1 Watts, 66, but in Exp. Tracey, 25 Verm. 93, (2 Deane,) the Court seemed to think otherwise; but see In re Powers, id. 261. In Bushell’s Case, (Vaugh. 135, S. C. 1 Freem. 1; 2 Sir T. Jones, 13; see Exp. Toney, 11 Missou. 661) it was said that in all precedents, in King’s Bench and Common Pleas, of discharges by habeas corpus, nothing could be “showed” of quashing the orders or decrees of the Court which made the wrong commitment; subsequently, however, (Rex vs *723 Fowler, Ld. Raym. 618,) -where a party was arrested on. a writ de exc. ca. out of Chancery, and on habeas corpus to King’s Bench, it appeared that the exc. ca. was liable to be quashed, the Court refused to discharge because the Chancellor had erroneously granted the exc. ca., but quashed that writ, and then discharged.
It is a sufficient matter of return to habeas corpus that the prisoner is in custody under sentence of a Court of jurisdiction competent to inquire of the offence, and to pass such sentence, without setting forth the particular circumstances necessary to warrant such a sentence (Rex vs. Suddis, 1 East, 306; Exp. Watkins, 3 Pet. 193; People vs. Mason, 9 Wend. 505; Bennac vs. People, 4 Barb. 31; Stoner vs. The State, 4 Missou. 614;) and no Court can, on habeas corpus, look behind the sentence of a Court having jurisdiction, not even beyond its own sentence (Johnson vs. U. S., 3 McLean, 89, Exp. Biddle, Washingt. “Union,” 26th Aug., 1855;) but on areturn of habeas corpus stating relator to be detained under process on conviction by a justice of the peace, the existence and validity of that process may be questioned. Bennac vs. People, 4 Barb. 31.
It is a sufficient matter of return to habeas corpus that the prisoner is in custody in execution, whether that execution be on the judgment of a Court, (Fitzh. Nat. Br. 251; 1 Rolle, 138; Swallow vs. The City of London, 1 Siderf. 289; Exp. Gill, 7 East, 376; Com. vs. Leckey, 1 Watts, 66,) or of a Justice of the Peace, (Bell vs. The State, 4 Gill, 301;) but on a return to habeas corpus that relator was committed by a Justice of the Peace, in execution, and it appeared on the face of the return that the sum for which the execution issued was beyond the jurisdiction of the Justice, the Court discharged the prisoner. (Geyger vs. Story, 1 Dall. 135.)
It is a sufficient matter of return that the prisoner is in custody under a commitment for contempt, for where a Court commits a party for contempt their adjudication is a conviction, and their commitment in consequence an execution (Exp. Kearney, 7 Wheat. 38; Crosby’s Case, 3 Wils. 138;) and this is the same, whether the commitment is by a legislative body or a judicial tribunal. (Reg. vs. Patty, 2 Salk. 503, S. C., 2 Ld. Raym. 1105; Rex vs. Flower, 8 T. R. 314; Burkett vs. Abbot, 14 East, 1, 150, 151; In re Belson, 3 Eng. Law and Eq. R. 55; In re Clarke, 6 [English] Jurist, 757. S. C. 2 G. & D. 780, 2 A. & E., N. S. 619; Anderson vs. Dunn, 6 Wheat., 204; Yeates vs. Lansing, 9 Johns. 394; People vs. Cassels, 5 Hill, 164; Smethurst’s Case, 2 Sandf. 724; Gist vs. Bowman, 2 Bay, 182; State vs. White, T. U. P. Charlt. 123, State vs. Tipton, 1 Blackfd. 166; and see Exp. Williamson, 4 Am. Law Reg. 27.) If a return is made of a commitment for contempt, and that commitment simply states a “ contempt,” and not facts to show it, the Court issuing the habeas corpus will look no further but remand; if, however, the commitment states facts to show the contempt, the Court will examine them to see if they constitute a contempt, and if not, will discharge the prisoner, *724 (Sheriff of Middlesex’s Case, 11 A. & E., 273; Burdett vs. Abbott, 14 East, 1, 151.)
Where there is a commitment by ■warrant, the officer must return it, otherwise of commitments by a Court to a proper officer in execution (King vs. Clerk, 1 Salk. 349; but see Exp. Dauncey, 8 [English] Jurist, 829, for the practice where the warrant is unusually long;) and where there is a convietion, the Court will require both the conviction and the warrant of commitment to be returned before them. ( Rex vs. Elwell, Str., 794.)
It is a sufficient matter of return to habeas corpus that the prisoner is in custody on a regular indictment for murder, and he cannot be discharged by proving his innocence, however clear the proof may be, but must abide his trial by jury. (People vs. M’Leod, 25 Wend. 483, and 1 Hill, 377.) In cases of habeas corpus prior to indictment, however, the Court will look into the depositions, before the magistrate and coroner’s inquest, and though the commitment be full and in due form, yet if the testimony proves no crime, the Court will discharge or bail. (Exp. Tayloe, 5 Cow. 39, 63.) Where a soldier obtained his habeas corpus and claimed to be discharged on the ground of the invalidity of his enlistment, and it was returned that he was under arrest on a charge of desertion, the Court remanded him, saying he must abide the sentence of a court martial before he could contest the validity of his enlistment. (Com. vs. Gamble, 11 S. &. R. 93; and see Commonwealth vs. Chandler, 11 Mass., 33.)
In England, it seems that the return of a commitment valid on its face, is sufficient, and that the Court will look no farther (Rex vs. Fenwick, 3 Sm., 369,) or, at least, such was the case before St. 56 Geo. Ill, Cap. 100, and whether that statute altered the law in that respect is doubtful, but even before it, where a commitment was bad in form, being, nevertheless, for cause, a discharge was refused. (Bethell’s Case, 1 Salk. 348, S. C 1 Ld. Raym. 47.) In the united States, however, though it has been said that to justify a detention or commitment, it must state some good cause certain, supported by oath (Exp Burford, 3 Cranch, Sup. Ct. 448;) a system of inquiry into the ground of commitment more extensive than that used in England, seems to prevail. Thus while it is said that the formally correct warrant of a magistrate defacto is sufficient ground for a demand (Wakker’s Case, 3 Barb. 102;) it is also said that if, on looking beyond the warrant, (which is prima facie sufficient) to the affidavit on which it issued, the Court is satisfied there was colorable proof, this is as far as they will go. (Prime’s Case, 1 Barb. 340; U. S. vs. Johns, 4 Dall. 412; S. C. not S. P. 1 W. C. C. R., 363; Exp. Taylor, 5 Cow., 39, 63; and see the rules proposed on the subject by the majority of the Court in Exp. Bennet, 2 Cranch, C. C. R. 612.) So, on habeas corpus for one held under the Act of Congress as a fugitive from justice, while the Court will not inquire into the question of probable guilt (In re Clarke, 9 Wend. 212; State vs. Buzine, 4 Harr. 572, 577,) they will investigate whether *725 the formal provisions of the statute have been properly followed. (In re Clarke, 9 wend., 212; Metzger’s C., 1 Barb. 248; Heyward’s Case, 1 Sandf. 701; Kaine’s Case, 14 How. 103; Nelson vs. Cutler, 3 McLean, 326; Geyger vs. Story, 1 Dall. 135; Bennac vs. The People, 4 Barb. 81; In re Washburne, 4 Johns. Chanc. 106.)
On a return of a valid committal, the Court will not examine into the circumstances of the arrest (Exp. Scott, 9 B. & C., 446,) neither will they proceed to’bail or discharge where a party had been committed for a further hearing, and had only been in detention a very short time. ( Exp. Smith. 5 Cow. 273; Exp. Cummines, D. C. E. D. Penna. 29th July, 1853, MS.)
Where to a habeas corpus it was returned that a vessel was captured for a violation of the embargo laws, and a part of her crew [the relators] detained on board the captor’s vessel as witnesses, the return was held to be sufficient, the relators not appearing to have applied to the admiralty to have their depositions taken, or having stipulated for their appearance. (State vs. Wenderstrandt, T. U. P. Charlt. 213.)